HIGGINS v MONROE EVENING NEWS

WITNESSES—RECOLLECTION—REFRESHMENT—PRIOR STATEMENT.

A statement previously made by a witness may be used to interrogate the witness on direct examination for the purpose of attempting to induce him to correct his testimony or to explain the apparent inconsistency between his prior statement and his testimony in court, such use being refreshment of the witness's recollection and not impeachment of one's own witness.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 June 7, 1972, at Grand Rapids. (Docket No. 13117.) Decided July 31, 1972. Leave to appeal denied, 388 Mich 786.

Daniel S. Higgins presented his claim for workmen's compensation against the Monroe Evening News and Michigan Mutual Liability Insurance Company. Compensation denied. Plaintiff appeals by leave granted. Reversed and remanded.

*Van Benschoten & Van Benschoten, P. C.,* for plaintiff.

*LeVasseur, Werner, Mitseff & Brown (Ellis R. Whinham, Jr.,* of counsel), for defendants.

Before: R. B. BURNS, P. J., and LEVIN and TAR-GONSKI,* JJ.

REFERENCES FOR POINTS IN HEADNOTE
58 Am Jur, Witnesses §§ 578 *et seq.,* 801.
Refreshment of recollection by use of memoranda on other writings, 82 ALR2d 473.

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Levin, J. Plaintiff, Daniel S. Higgins, was struck by an automobile and seriously injured. He sought workmen's compensation benefits from defendant Monroe Evening News, claiming that he was peddling its newspapers when he was injured. He now appeals from a determination adverse to his claim made by the Workmen's Compensation Appeal Board. The appeal board found that there was no contract of hire.

At the time of the accident Danny Higgins was five years of age. It is claimed that Frank Handler, a substitute newsboy,[1] asked Danny to assist him in delivering the newspapers.

Under the Workmen's Compensation Act, an employer, who contracts with an uninsured contractor for the execution by or under the contractor (or a subcontractor, where the employer gives permission to subcontract) of the whole or any part of any work undertaken by the employer, is liable to pay any workman employed in the execution of the work any compensation which the employer would have been liable to pay if the workman had been immediately employed by him.[2]

The appeal board concluded that Danny was not employed by substitute newsboy Handler to deliver the papers. The board said:

"The most generous reading of these proofs would be that plaintiff happily accompanied his fellow five-year-old [Handler's younger brother], joining that friend's big brother—the substitute paper boy. He may, or may not, have handed a newspaper to one or two of the route's customers—an eagerly-sought opportunity to

[1] The appeal board found that the regular newsboy assigned to the route frequently participated in school sports, and paid Handler $1.50 to deliver his paper route on practice nights.

[2] Formerly MCLA 411.9; MSA 17.150; now MCLA 418.171; MSA 17.237(171).

curry favor with the big-boy hero Tom Sawyer figure he was accompanying that few five-year-olds would turn down.

"But where was the contract of hire? Where was the assigned task and the consideration offered for same? It is clear—there was none."

The board referred to one of its earlier decisions[3] where—it said in its written opinion filed in this case—a contract of hire was found in the offering of two bottles of soft drink in return for cleaning up broken bottles on the street. The board distinguished that case on the ground that here there was no "quid pro quo—the offer of a 'wage' for a specified job".

Danny's lawyer claims that he was unduly restricted by the hearing referee in questioning Handler, and that Danny is entitled to a reversal of the appeal board's decision affirming the referee's denial of compensation and to have the case remanded so that Handler can be fully interrogated. We agree.

Handler was called as a witness by Danny's lawyer. Handler testified that his five-year-old brother, Nicky, helped him "a couple of times" deliver papers for defendant Monroe Evening News. He said that "Danny went with me this *one time*". (Emphasis supplied.) He did not think that "on the day in question" Danny delivered any papers. He said that "Nicky and Danny were in the house and I guess my mom wanted them out of the house so I asked them if they wanted to go along". He said Danny or Nicky may have dropped some papers off.

He was then shown a copy of a written statement which he acknowledged having signed on August 16, 1968, 2-1/2 years after the accident. He

---

[3] *Zdrojewski v Vernor's Ginger Ale,* 1959 WCABO 778.

said that the statement was true when it was given.

Danny's lawyer asked to be permitted to use the statement in several different ways, including to refresh the recollection of the witness. The referee refused to allow him to do so. Danny's lawyer asked specifically, "Then I'm not to ask any questions about refreshment of recollection?" to which the referee responded, "Not on that".

Handler then testified that he had paid helpers to assist him in peddling the papers: "if they wanted it, I would give them something, yes, you know, if they wanted a dime I would give them a dime or pop or a candy bar I would get it for them". He could not recall whether he had given Danny Higgins anything like that because he could not recall whether Danny had ever gone with him before—he didn't know. He said that he could not remember "if Danny went with me except for the one occasion. If he had, I did give him something, but, otherwise, I don't know". The defendants' lawyer asked that this be stricken because it might never have happened, to which the referee responded, "That is true, that is certainly speculative".

On cross-examination by defendants' lawyer, Handler said that he thought it was the first time Danny had gone along but he wasn't going to say for sure. Handler's little sister had gone with him a couple of times as well as his brother Nicky. He said that in addition to his baby brother and baby sister "different kids would come with me every once in a while, I think". He didn't know whether Danny had dropped any papers off that day, "he might have dropped one off".

The statement which Handler acknowledged he had given on August 16, 1968, and which he testified was true when given, reads as follows:

"My name is Frank Handler, I am 18 years old. I live with my parents at 132 Lavendar Street, Monroe, Michigan. On February 4, 1966 I was delivering the Monroe Evening News to the customers on the route. Nicky Handler my brother and Danny Higgins were helping me to deliver the papers. All of the newspaper boys that I know off [of] usually have a couple little kids help them deliver. I would pay Danny Higgins money for helping me or if he wanted candy or something I would buy it for him. Danny and Nicky usually helped me about 3 or 4 times a week. On this day of February 4, 1966 at about 4:00 p.m. Nicky, Danny and I was in front of 306 West Elm Street. We were on the south side of Elm Street. Danny started across the street and was hit by a car. The car was going west on Elm at about 35 miles per hour. I was working the route for Robert Edwards. I helped him off and on for about one year.

"I have read this statement and it is true and correct."

It is apparent that this statement differs substantially from Handler's testimony at the hearing. If Handler could have been induced to repeat at the hearing the statements made on August 16th, the record presented to the appeal board would have been significantly different on a vital aspect of the case. Such a record would have shown that Danny helped Handler deliver his papers frequently and that Handler paid Danny money or candy or something for helping him.

In *Hileman v Indreica,* 385 Mich 1, 7–8, 9, 15 (1971), the Michigan Supreme Court considered the use of prior statements to refresh or revive a witness's memory, and reiterated the distinction between the use of such statements to refresh a witness's recollection and their use by the voucher of credibility to impeach the witness. The Court concluded that the voucher of credibility, seeking to refresh a witness's recollection, is entitled to use

a statement given by the witness to interrogate him, and that the use of such statements may not be limited to simply asking the witness whether, after examining the statement, his memory is refreshed.[4]

The *Hileman* Court quoted with approval from 5 Jones, Evidence (1914 ed), § 883, pp 330–331, the following:

"The expression 'refreshing the memory' is generally taken to refer to the stimulation of a witness' memory by some written document such as we have hereinbefore particularly discussed. But it may be refreshed by other modes than the use of memoranda in writing. While a party cannot, as a rule, cross-examine his own witness, if a witness has given an ambiguous or indefinite answer, *or if his memory is at fault,* the court, in the exercise of a proper discretion, may allow *verbal inquiry* as to statements or circumstances which may tend to enable the witness to recollect more clearly the fact sought to be proved. It not infrequently happens that a witness, under the embarrassment of an examination, forgets, or omits to state, facts within his knowledge, or is disinclined to disclose fully and definitely what he knows. *Ample opportunity* should be afforded for the *correction* of such mistakes and omissions, and for *eliciting* fully the facts that are material to the issue. The recollection of the witness may be so refreshed by directing his attention to a former conversation or declaration as to cause him promptly *to correct his testimony or explain* the apparent inconsistency." (Emphasis supplied.)

The Court then quoted from *Higdon v Kelley,* 339 Mich 209, 219 (1954), the following:

"This Court has held that prior statements may not be used when the sole purpose in their use is to impeach the credibility of a party's own witness. See

---

[4] The dissenting justices in *Hileman* would have so limited the use of the statement. See *Hileman v Indreica,* 385 Mich 1, 26, 29 (1971).

*Farthing v Hepinstall,* 243 Mich 380 [1928]. But when the purpose of referring to the prior statement is to refresh the memory of a witness or to induce the witness to explain an apparent inconsistency, the prior statement may be referred to during direct examination."

The *Hileman* Court said that the trial judge in that case should have permitted "a *complete interrogation* of [the witness] for memory revival by reference to her deposition. She may indeed have been able to provide satisfactory *explanations".* (Emphasis supplied.)

Since Danny's lawyer sought to use the statement to refresh Handler's recollection—not to impeach him as a hostile witness—it is of no importance whether Danny's lawyer was or was not surprised by Handler's testimony at the hearing.[5]

We conclude that Danny's lawyer should have been permitted to interrogate this important witness for the purpose of attempting to induce him to correct his testimony or to explain the apparent inconsistency between his prior statement and his hearing testimony.

Reversed, and remanded for a new hearing before another referee. Costs to plaintiff.

All concurred.

---

[5] *Cf.* McCormick on Evidence, § 9, p 14; 3 Wigmore on Evidence (1970 ed), § 758, p 125; 4 Jones on Evidence (5th ed), § 904, p 1691. As to impeachment, see 3A Wigmore, Evidence (1970 ed), § 904, p 672.