HIGGINS v MONROE EVENING NEWS

Docket No. 58842. Argued November 2, 1977 (Calendar No. 10).—
Decided December 26, 1978.

Daniel S. Higgins, who was then five years old, was injured
crossing the street while he was accompanying a substitute
paperboy, who worked on a per diem basis, on his paper route.
Daniel Higgins was awarded workmen's compensation benefits
against the regular paperboy's employer, Monroe Evening
News, and its insurer, Michigan Mutual Liability Insurance
Company. The Workmen's Compensation Appeal Board af-
firmed the award of compensation but reduced the amount of
benefits awarded. The Court of Appeals, T. M. Burns, P.J., and
R. B. Burns and V. J. Brennan, JJ., reversed the award of
compensation (Docket Nos. 23605, 23812). Plaintiff appeals.
*Held:*

REFERENCES FOR POINTS IN HEADNOTES

[1, 14, 16] 81 Am Jur 2d, Workmen's Compensation § 165.

[2] 81 Am Jur 2d, Workmen's Compensation §§ 156-159.

[3, 4] 53 Am Jur 2d, Master and Servant §§ 151-156, 222.
82 Am Jur 2d, Workmen's Compensation § 251.
48 Am Jur 2d, Labor and Labor Relations §§ 1680, 1866 *et seq.*

[5, 20] 81 Am Jur 2d, Workmen's Compensation §§ 53, 162.

[6] 82 Am Jur 2d, Workmen's Compensation § 614.

[7] 53 Am Jur 2d, Master and Servant §§ 14, 15.

[8] 53 Am Jur 2d, Master and Servant § 179.
81 Am Jur 2d, Workmen's Compensation §§ 153, 162, 165.

[9, 10] 82 Am Jur 2d, Workmen's Compensation § 565 *et seq.*

[11] 81 Am Jur 2d, Workmen's Compensation § 162.

[12] 82 Am Jur 2d, Workmen's Compensation § 547.

[13] 73 Am Jur 2d, Statutes §§ 146-148.

[15] 82 Am Jur 2d, Workmen's Compensation § 639.

[17] 82 Am Jur 2d, Workmen's Compensation § 534.

[18] 82 Am Jur 2d, Workmen's Compensation §§ 476-479.

[19] 82 Am Jur 2d, Workmen's Compensation §§ 59, 171, 172, 496.

[21] 81 Workmen's Compensation § 116.
82 Workmen's Compensation § 284.

The decision of the Court of Appeals denying the award of compensation is affirmed.

Justice Blair Moody, Jr., joined by Justices Williams and Coleman, wrote:

1. The Worker's Disability Compensation Act expressly provides that minors (without age limitation) are to be considered employees and have the legal power to contract. Age may be considered as one factor among many when determining whether an employment relationship exists. However, once an employer-employee relationship has been established, an employee may not be barred from compensation recovery because of age, nor is the triviality of the consideration or remuneration alone a barrier to granting compensation.

2. The Hittle Juvenile Employment Act creates a "street trade" exemption for newspaper distribution from the general rule that it is illegal to employ a minor who is too young to obtain a work permit. That statutory exemption is not a denial of equal protection because there are rational bases for permitting children under the age of 14 to work as paperboys while generally prohibiting their employment in other occupations. The working hours and conditions, health risks, and employment abuses which existed in other areas of child labor are considerably different from those of newspaper distribution and the benefits from this type of work experience for children support its encouragement. The statutory distinction is reasonably related to the legislative goal of preventing child labor abuse.

3. Although findings of ordinary facts by the Workmen's Compensation Appeal Board are binding upon the Court if supported by any evidence, finding the requisite contract of hire in this case involves reaching a legal conclusion. Therefore, the finding of the Workmen's Compensation Appeal Board that a contract of hire existed between Handler and the plaintiff is reviewable by the Court.

4. The conclusion that a contract of hire existed between the substitute newsboy and the plaintiff ignores a major principle of contract law. Valid consideration for a contract cannot be presumed merely because the parties receive benefit from each other. Rather, a bargained-for exchange is required. The essence of consideration is legal detriment that has been bargained for and exchanged for the promise. The parties must have agreed and intended that the benefits each derived be the consideration for a contract. To reach the conclusion that a

contract of hire existed it must be found that the substitute newsboy promised payment to the plaintiff in exchange for his help in delivering papers, and that the plaintiff agreed to help deliver the papers because in exchange he would receive a dime, a bottle of pop, or candy.

5. Under the circumstances of this case, a contract of hire did not exist between the parties. The testimony by the substitute newsboy illustrates a social relationship, wherein he gratuitously promised to give the plaintiff a dime, a bottle of pop, or candy if he helped deliver the newspapers. The substitute newsboy stated that his brother and the plaintiff had gone along to deliver papers because his mother wanted the children out of the house. He repeatedly used the term "give" when referring to the rewards he had promised the other boys, and he did not "give" his brother anything after delivering the papers that day. This testimony illustrates a gratuitous promise rather than a contract of hire.

6. The circumstances of minor children "helping" their neighbors and relatives run errands and do odd jobs while receiving minor *gratuitous* rewards negate the usual implication that payment for services is expected and that a contract of hire is formulated. This distinction is not predicated upon a bias against children but a common sense recognition of the nature of the relationship. Usually these associations are not based upon an employment relationship. The requisite contract of hire is not established in this case.

Justice Ryan agreed with Justice Moody and Chief Justice Kavanagh that the "street trade" exemption of the Hittle Juvenile Employment Act does not constitute an unconstitutional denial of equal protection. He agreed with Justice Moody that the finding of the Court of Appeals that as a matter of law the plaintiff was not employed by either the newspaper or the substitute newsboy must be affirmed, but for a different reason: while the Court is bound by the factual findings of the Workmen's Compensation Appeal Board, there is no evidence in the record of this case or the facts found by the board to sustain the legal conclusion that the plaintiff was employed by either the defendant newspaper or the substitute newsboy.

Affirmed.

Chief Justice Kavanagh, joined by Justices Levin and Fitzgerald, would reverse the decision of the Court of Appeals and reinstate the award of compensation:

1. The factual finding of the Workmen's Compensation Appeal Board that the plaintiff was an employee of the substitute paperboy, who was an employee of the regular paperboy, who

was an independent contractor hired by the defendant Monroe Evening News, is supported by evidence in the record. Therefore, that finding will not be disturbed on appeal.

2. The plaintiff's employment was legal because it falls within the "street trades" exemption of the Hittle Juvenile Employment Act. That statutory exemption is not a denial of equal protection because there are rational bases for permitting children under the age of 14 to work as paperboys while generally prohibiting their employment in other occupations. The working hours and conditions, health risks, and employment abuses which existed in other areas of child labor are considerably different from those of newspaper distribution and the benefits from this type of work experience for children support its encouragement. The statutory distinction is reasonably related to the legislative goal of preventing child labor abuse.

3. Whether a contract of hire may be inferred from the conduct, language or other pertinent circumstances of a relationship is a matter of fact which may not be prescinded from the fact finder if any of the facts are in dispute. The facts and legitimate inferences from them as to the plaintiff's employment relationship were in dispute here and the Workmen's Compensation Appeal Board resolved the dispute, finding that a contract of employment existed.

4. The statutory definition of an employee is not ambiguous; therefore it is not necessary to consider any unstated legislative intent in construing the statutory language. The statutory direction that minors be considered the same as adult employees with the same power to contract makes age irrelevant. An employment relationship does not turn on whether an employee depends upon the contract for his livelihood or whether his motive in entering into it was to obtain remuneration.

5. The substitute carrier in the instant case was paid approximately $1.50 a day by the regular paperboy. It is consistent with that scale of compensation that his helpers would be paid smaller amounts for their less responsible and less time-consuming efforts. A promise of "a dime, bottle of pop or candy bar" could constitute consideration for a contract of employment under these circumstances. The Workmen's Compensation Appeal Board also properly found that the substitute carriers and helpers, such as the plaintiff, were part of defendant newspaper's distribution system. The newspaper could have guarded against the use of very young helpers by limiting or supervising the carrier's authority to hire substitutes and help-

ers. The factual determination of the Workmen's Compensation Appeal Board that a contract of employment existed between plaintiff and the defendant newspaper warrants the award of workmen's compensation benefits.

Justice Levin signed Chief Justice Kavanagh's opinion for reversal, but wrote separately to express some additional thoughts:

1. Imposing on youngsters a higher burden of proof or persuasion and applying a more stringent standard of review than for adults conflicts with the legislative directive that minors "shall be considered *the same* as" adult employees. Age may not be considered as a factor when determining whether an employment relationship exists.

2. A worker's compensation claimant, adult or minor, need not show either an "agreement" with his employer or that but for promised compensation he would not have performed the work. A contract of hire need not be bilateral, it may be unilateral: an offer of compensation which may be accepted by doing the expected work. If such an offer is made and the expected work is performed, there is a contract of hire although there was no bilateral agreement and although the worker might have performed the work gratuitously, if asked to do so, out of a desire to be helpful or to satisfy some personal desire of participation in the enterprise or other motivation. An employer who has offered compensation may not refuse to pay workmen's compensation benefits to an injured worker who performed expected work because there was no bilateral agreement, nor may he seek to prove that the worker might have performed the work gratuitously if the employer had asked to do so and had not offered or promised compensation for the work.

3. In this case the plaintiff proved to the satisfaction of the Workmen's Compensation Appeal Board that compensation for his work was offered or promised from which it would be reasonable to infer that 1) it was thereby sought to induce him to work, 2) he was thereby so induced, 3) that he worked "because" of such inducement, and 4) that such inducement and work were an intended exchange of "benefits" and "detriments". Assuming that the plaintiff must show that he worked "because" of the offer or promise of compensation, it was for the Workmen's Compensation Appeal Board, not the Supreme Court as a matter of law, to resolve that factual issue.

4. The sense of the Worker's Disability Compensation Act is that where the work of the principal is contracted out to an exempt or uninsured employer, the principal is as liable as if

the injured worker had been "immediately employed" by it. Newscarriers are indisputably entitled to the benefits of the act. It is a question of fact, not of law, whether the plaintiff was engaged in the defendant newspaper's work under a contract of hire as part of its distribution system. The newspaper's policy was to encourage the hiring of substitutes when the carrier could not deliver the paper. A practice had developed of using helpers. The newspaper did not limit the authority of its carriers to hire substitutes and helpers, nor did it supervise the hiring. The plaintiff was doing the same work that others who would be entitled to benefits were doing. It is not appropriate to deny benefits as a matter of law because the plaintiff was younger and what he was to receive was of lesser value, or because there would be no workmen's compensation liability had he been doing like work for a friend or neighbor rather than as part of the newspaper's distribution system. Concern about liability being imposed upon parents or neighbors for household chores performed by youngsters is misplaced; exemptions and exclusions in the statute eliminate that.

5. The Court need not today express a view on the scope of workmen's compensation liability for social situations, or where the service is rendered to a charitable or patriotic organization. The implication of broad and undefined exceptions into the jurisprudence of workmen's compensation is inappropriate. The business of publishing a newspaper has none of the earmarks of a social, charitable, or patriotic undertaking. It is not expected that anyone, even if young or very young, will deliver newspapers gratuitously.

70 Mich App 407; 245 NW2d 769 (1976) affirmed.

OPINION BY BLAIR MOODY, JR., J.

1. WORKMEN'S COMPENSATION — INFANTS — EMPLOYMENT — POWER
   TO CONTRACT.

   *The Worker's Disability Compensation Act expressly provides that minors, without age limitation, are to be considered the same as and have the same power to contract as adult employees; age may be considered as one factor among many when determining whether an employment relationship exists, but, once it is established, an employee may not be barred from compensation recovery because of age (MCL 418.161[1][b]; MSA 17.237[161][1][b]).*

2. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — REMUNER-
   ATION.

   *The triviality or amount of consideration or remuneration to an*

*employee cannot alone act as a bar to worker's disability compensation payments; the statute does not require a worker to have a minimum wage or a minimum number of hours worked per week to receive compensation (MCL 418.371; MSA 17.237[371]).*

3. INFANTS — MASTER AND SERVANT — WORK PERMIT — HITTLE JUVENILE EMPLOYMENT ACT — NEWSPAPER DISTRIBUTION.

The Hittle Juvenile Employment Act creates a "street trade" exemption for newspaper distribution from the general rule that it is illegal to employ a minor who is too young to obtain a work permit (MCL 409.14, 409.28; MSA 17.714, 17.728).

4. INFANTS — MASTER AND SERVANT — WORK PERMIT — HITTLE JUVENILE EMPLOYMENT ACT — NEWSPAPER DISTRIBUTION — EQUAL PROTECTION.

The statutory exemption of minors who distribute newspapers from the general rule that it is illegal to employ a minor who is too young to obtain a work permit is not a denial of equal protection because the distinction is reasonably related to the legislative goal of preventing child labor abuse; the working hours and conditions, health risks, and employment abuses which existed in other areas of child labor are considerably different from those of newspaper distribution and the benefits from this type of work experience for children support its encouragement (US Const, Am XIV; Const 1963, art 1, § 2; MCL 409.14, 409.28; MSA 17.714, 17.728).

5. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — INFANTS — NEWSPAPER DISTRIBUTION.

*An employment relation did not exist between a minor, who claimed workmen's compensation for injuries he received while accompanying a substitute newspaperboy on his delivery route, and the newspaper where the testimony of the substitute newspaperboy illustrated a social relationship, wherein he gratuitously promised to give the claimant a dime, a bottle of pop, or candy if the claimant helped deliver the newspapers, the substitute newspaperboy said that his younger brother and the claimant had accompanied him because his mother wanted the children out of the house, he repeatedly used the term "give" when referring to his relationship with the boys, and he did not "give" his younger brother any reward for his assistance on that day (MCL 418.161[1][b]: MSA 17.127[161][1][b]).*

6. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — FINDINGS OF FACT — QUESTION OF LAW.

*A finding by the Workmen's Compensation Appeal Board of a*

*contract of hire which involves reaching a legal conclusion is reviewable by the courts (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).*

7. MASTER AND SERVANT — CONTRACTS — CONSIDERATION.

*Valid consideration for a contract of hire cannot be presumed merely because the parties receive benefit from each other; rather there must be a bargained-for exchange of legal detriments for the promise and the parties must have agreed and intended that the benefits each derived be the consideration for a contract.*

8. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — INFANTS.

*The circumstances of minor children "helping" their neighbors and relatives run errands and do odd jobs while receiving minor gratuitous rewards negate the usual implication that payment for services is expected and that a contract of hire is formulated; this distinction is not predicated upon a bias against children but a common sense recognition of the nature of the relationship, which is usually an association not based upon an employment relationship (MCL 418.161[1][b]; MSA 17.237[161][1][b]).*

CONCURRING OPINION BY RYAN, J.

See headnotes 3 and 4.

9. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — FINDINGS OF FACT — QUESTION OF LAW.

*The courts are not bound by a finding by the Workmen's Compensation Appeal Board of a contract of hire where there is no evidence in the record or the facts found by the Workmen's Compensation Appeal Board to sustain the legal conclusion that a plaintiff was employed by either a defendant newspaper or a substitute newsboy to deliver papers as the plaintiff had claimed (Const 1963, art 6, § 28; MCL 418.161[1][b], 418.861; MSA 17.237[161][1][b], 17.237[861]).*

DISSENTING OPINION BY KAVANAGH, C.J.

See headnotes 3 and 4.

10. WORKMEN'S COMPENSATION — FINDINGS OF FACT — APPEAL AND ERROR.

*Appellate courts will not disturb the factual findings of the*

*Workmen's Compensation Appeal Board unless there is an absence of support in the record (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).*

11. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — INFANTS — NEWSPAPER DISTRIBUTION — FINDINGS OF FACT.

*A finding of the Workmen's Compensation Appeal Board that a five-year-old child was an employee of a newspaper for delivering its papers will not be disturbed on appeal where the child was promised a dime, bottle of pop or a candy bar to help a substitute paperboy deliver papers, which was consistent with the $1.50 per day compensation given to the substitute paperboy for more responsible and more time-consuming efforts; and minor substitute paper carriers and helpers were part of the newspaper's distribution system which did not limit or supervise the regular paper carrier's authority to hire substitutes and helpers (MCL 418.161[1][b]; MSA 17.237[161][1][b]).*

12. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — FINDINGS OF FACT.

*Whether a contract of hire may be inferred from the conduct, language or other pertinent circumstances of a relationship is a matter of fact which may not be prescinded from the fact finder if any of the facts are in dispute.*

13. STATUTES — CONSTRUCTION — LEGISLATIVE INTENT.

*Statutory language is construed, as a general rule, consistent with its plain meaning; only when statutory language is found to be ambiguous are courts free to look to legislative intent in an effort to understand and give effect to the words used.*

14. WORKMEN'S COMPENSATION — MASTER AND SERVANT — EMPLOYMENT RELATION — INFANTS.

*An employment relationship does not turn on whether an employee depends upon the employment contract for his livelihood or whether his motive in entering into it was to obtain remuneration; the tender age of a workmen's compensation claimant should not influence the determination of an employment relation, because the statutory direction that minors be considered the same as adult employees with the same power to contract makes age irrelevant (MCL 418.161[1][b]; MSA 17.237[161][1][b]).*

DISSENTING OPINION BY LEVIN, J.

15. WORKMEN'S COMPENSATION — INFANTS — EMPLOYMENT — BURDEN OF PROOF — APPEAL AND ERROR.

*Imposing on minors a higher burden of proof or persuasion, and*

· *applying a more stringent standard of appellate review, than for adults in a workmen's compensation case conflicts with the legislative directive that minors "shall be considered the same" as adult employees (MCL 418.161[1][b]; MSA 17.237[161][1][b]).*

16. WORKMEN'S COMPENSATION — INFANTS — EMPLOYMENT RELATION — REMUNERATION.

   *A minor claimant's age may not be considered as a factor when determining whether an employment relation exists under the Worker's Disability Compensation Act (MCL 418.161[1][b], 418.371; MSA 17.237[161][1][b], 17.237[371]).*

17. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — REMUNERATION.

   *A worker seeking to sustain the burden of establishing a contract of hire under the Worker's Disability Compensation Act need not show either an "agreement" with his employer or that but for promised compensation he would not have performed the work; a contract of hire need not be bilateral, it may be unilateral, an offer of compensation which may be accepted by doing the expected work.*

18. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — FINDINGS OF FACT.

   *It is the function of the Workmen's Compensation Appeal Board, not the courts, to draw the inference that an employment relationship existed in applying a rule of law to the facts of a case.*

19. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — "STATUTORY" EMPLOYER — PRINCIPAL AND AGENT.

   *The sense of the Worker's Disability Compensation Act is that, where the work of the principal employer is contracted out to an exempt or uninsured employer, the principal employer is as liable for workmen's compensation benefits as if the injured worker had been immediately employed by it (MCL 418.171; MSA 17.237[171]).*

20. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — INFANTS — NEWSPAPER DISTRIBUTION.

   *It is not appropriate to deny workmen's compensation benefits as a matter of law because the claimant, who was distributing newspapers, was younger than others who were doing the same work and the compensation he was to receive was of lesser value, or because there would be no liability if he had been doing like work for a friend or neighbor rather than as part of the newspaper's distribution system, where a practice had*

*developed with some encouragement by the newspapers for the regular carriers to use substitutes and helpers to distribute the newspapers, and the newspaper did not limit the authority of the carriers to hire substitutes and helpers, nor did it supervise the hiring (MCL 418.161[1][b]; MSA 17.237[161][b]).*

21. WORKMEN'S COMPENSATION — EMPLOYMENT RELATION — NEWSPAPER DISTRIBUTION.

*The implication of broad and undefined exceptions into the scope of workmen's compensation liability for social situations, or where the service is rendered to a charitable or patriotic organization, is inappropriate where the issue before the court involves the business of publishing and distributing a newspaper which has none of the earmarks of a social, charitable, or patriotic undertaking; it is not expected that anyone, even if young or very young, will deliver newspapers gratuitously (MCL 418.161[1][b]; MSA 17.237[161][1][b]).*

*van Benschoten & van Benschoten, P.C.,* for plaintiff.

*LeVasseur, Mitseff, Egan & Capp, P.C.,* for defendants.

BLAIR MOODY, JR., J. The lengthy history of this case is as follows:

1. On August 24, 1968, a petition for workers' compensation was filed by the plaintiff.

2. Hearings were held before Referee George Huber on May 6 and 27, 1969.

3. On July 14, 1969, the referee held that plaintiff was not entitled to compensation because he had not been peddling papers or acting as an employee of the newspaper at the time of the accident.

4. The Workmen's Compensation Appeal Board (the board) affirmed the referee's decision on November 10, 1971.

5. The Court of Appeals, in an opinion authored by the now Justice LEVIN, reversed the board's decision and remanded for further hearing before

another referee. 42 Mich App 301; 201 NW2d 665 (1972).

6. On July 25, 1973, the new hearing was held before Referee Ray R. Ravary.

7. In a decision filed July 28, 1973, Referee Ravary opined that the plaintiff had suffered a compensable injury and ordered the defendant, Monroe Evening News, to pay compensation at the rate of $54 per week.

8. On March 12, 1975, the board, in a 4-to-1 decision, affirmed the awarding of compensation but reduced the amount to $27 per week.

9. The Court of Appeals, in a 2-to-1 decision, reversed the board's decision, holding, as a matter of law, that the plaintiff was not employed by either the defendant or the substitute newsboy within the meaning of MCL 418.161(1)(b); MSA 17.237(161)(1)(b). 70 Mich App 407; 245 NW2d 769 (1976).

10. We granted leave to appeal on March 24, 1977. 399 Mich 869 (1977).

This much-litigated and -appealed case stems from a simple fact situation. On February 4, 1966, Frank Handler was delivering the Monroe Evening News. Frank Handler was not the regular newspaper boy, but he substituted for Robert Edwards, the "owner" of the route, when Edwards participated in school athletic activities.

Two five-year-old youngsters, Daniel Higgins, the plaintiff, and Frank Handler's younger brother, Nicholas, accompanied Frank on a part of the newspaper route that day. While accompanying Frank Handler, the plaintiff sustained serious injuries when struck by a motor vehicle while crossing Elm Street in the City of Monroe.

Throughout this litigation, two major fact questions surfaced: whether the plaintiff was actually

delivering defendant's newspapers when the accident occurred and whether he was promised remuneration for his efforts. Within the conceptual framework that defendant's newspaper carriers are independent contractors,[1] the second Workmen's Compensation Appeal Board opinion answered these questions with specific findings of fact:

"Under a contractual arrangement which had existed for approximately one (1) year prior to the injury involved herein, Frank Handler had agreed to act as a regular substitute for Bobby Edwards, a newsboy for defendant. For this service, Handler was paid approximately one dollar and fifty cents ($1.50) per day. In performing his end of the bargain, Handler had made use of the services of others, including his little brother and plaintiff, on a number of occasions as helpers in return for which he would buy them pop, candy or give them a dime. This use and hiring of substitutes and helpers by regular newsboys and substitutes was committed to and left within the absolute discretion of the carriers and substitutes by defendant. Indeed, the practice was not only well known to defendant but expected and required. Defendant neither claimed nor assumed any responsibility or control over the manner in which the newspapers were delivered or who delivered them. *On the occasion of plaintiff's injury, February 4, 1966, plaintiff was helping Handler deliver newspapers, as he had in the past, for which assistance he had been promised remuneration in the form of either a bottle of pop, candy or a dime.*" (Emphasis added.)

Findings of fact in workers' compensation proceedings are conclusive in the absence of fraud,

---

[1] This conceptual framework is adopted in the instant case for two reasons: (1) Throughout the litigation the relationship between the defendant and its newsboys has been treated factually as one of principal—independent contractor. (2) The issue presented is not the nature of this relationship, the distinction between employees and independent contractors, but the existence of the employment relationship itself.

thus, we are bound by the board's factual determination. Const 1963, art 6, § 28 and MCL 418.861; MSA 17.237(861).

The dispositive issue in this case is whether a contract of hire existed between plaintiff and Frank Handler, the substitute newsboy. However, several related issues have been presented and considered by the board and the Court of Appeals; therefore, before reaching the dispositive question, four other issues will be addressed:

1. Is the applicability of the Worker's Disability Compensation Act (the act) to an employment relationship dependent upon a minimum age requirement?

2. Is the applicability of the act to an employment relationship dependent upon a minimum wage requirement?

3. Assuming an employment relationship between plaintiff and defendant, was there a basis for concluding that plaintiff's employment was illegal under the Hittle Juvenile Employment Act and, therefore, for awarding double compensation?

4. If the employment was not illegal because of the statutory exception created by MCL 409.14; MSA 17.714, is that provision of the Hittle Juvenile Employment Act unconstitutional as a denial of equal protection?

We answer all four questions in the negative.

The Worker's Disability Compensation Act defines employee as:

"Every person in the service of another, under any contract of hire, express or implied, including aliens, a person regularly employed on a full-time basis by his spouse having specified hours of employment at a specified rate of pay, working members of partnerships receiving therefrom wages irrespective of profits[,] a person insured for whom and to the extent premiums

are paid based on wages, earnings, or profits, *and minors, who shall be considered the same as and have the same power to contract as adult employees."* (Emphasis added.) MCL 418.161(1)(b); MSA 17.237(161)(1)(b).

Thus, the statute expressly provides that minors (without age limitation) are to be considered employees and have the legal power to contract. If the Legislature intended to impose age barriers to compensability it could have expressly inserted such limitations in the appropriate statutory provisions. Nowhere in the act is there even a hint of age limitation, nor is there any judicial authority for such a proposition. Age may be considered as one factor among many when determining whether an employment relationship exists. However, once an employer-employee relationship is established, an employee may not be barred from compensation recovery because of age.

Nor can the triviality of the consideration or remuneration to an employee be used as a barrier to receiving compensation. Neither the statutory provisions nor case law supports such a proposition. In fact, § 418.371 which specifically provides for calculation of wage loss compensation for part-time employees refutes any allegation that a minimum wage or number of hours worked per week are necessary in order to receive compensation. MCL 418.371; MSA 17.237(371). The statutory provisions dealing with computation of compensation use a sliding scale based upon weekly wage loss with minimum and maximum rates, the maximum rates to be adjusted on an annual basis. MCL 418.351; MSA 17.237(351) and MCL 418.355; MSA 17.237(355). Therefore, we specifically hold that the amount of employee remuneration alone cannot act as a bar to disability compensation payments.

Hearing Referee Ray Ravary found that the defendant was liable for double compensation because the plaintiff was too young to secure a work permit, thereby making his employment illegal. The act requires that the employment "be shown to be illegal" at the time of the injury for the employee to receive double compensation. MCL 418.161(1)(b); MSA 17.237(161)(1)(b). The board reversed the double compensation award after examining the existing statutes defining illegal juvenile employment.

We agree with the reasoning of the board. Our statutes, MCL 409.14; MSA 17.714[2] and MCL 409.28; MSA 17.728,[3] create a "street trade" exemption for newspaper distribution from the gen-

---

[2] "Nothing in this act shall apply to or prohibit any minor from engaging in:

"(a) Street trades, except as prohibited under section 23.

"(b) Domestic work or chores in connection with private residences.

"(c) Farm work.

"(d) Employment in a trade in which the parent or duly appointed guardian of such minor is self-employed.

"(e) Employment in a business owned and operated by such parent or guardian. For the purposes of this provision, a business shall be deemed to be owned by such parent or guardian if he is either the sole owner, partner or stockholder therein and shall be deemed to be operated by him if he devotes substantially all of his normal working hours to the operation of such business.

"In the event that such minor is required by law to attend school, then such work may only be performed outside of school hours.

"(f) Employment on a camp site of a nonprofit corporation engaged in citizenship training and character building during periods of school vacations." MCL 409.14; MSA 17.714.

[3] "The term 'street trade' shall be deemed to refer to any 1 or more of the following occupations:

"(a) Soliciting subscriptions for newspapers, magazines or other periodicals;

"(b) Distributing, selling or offering for sale newspapers, magazines, periodicals, advertising matter;

"(c) Boot blacking;

"(d) Selling or offering for sale of popcorn, peanuts, candy, fruit and soft drinks in concessions owned and operated by a boy scout troop, girl scout troop, or any other youth organization.

"Provided, That the same is conducted in a public place." MCL 409.28; MSA 17.728.

eral rule that it is illegal to employ a minor who is too young to obtain a work permit. Since the employment of minors in "street trades" is not illegal, and the distribution of newspapers is a "street trade", work permit requirements do not apply to paperboys.

Plaintiff argues that this "street trade" exemption of the Hittle Juvenile Employment Act is an unconstitutional denial of equal protection. We adopt Court of Appeals Judge T. M. BURNS' succinct and accurate refutation of this argument:

"Legislation is invalid on equal protection grounds if it creates classifications which are without reasonable bases and are purely arbitrary. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975). It is clear to me that there are rational bases for permitting children under the age of 14 to work as paperboys while generally prohibiting their employment in other occupations. The working hours and conditions of children who deliver newspapers are sufficiently distinct from those in other industries in which children were historically employed, and the perceived benefit of this type of work experience for children properly supports its encouragement. It is also reasonable to assume that the health risks and employment abuses which existed in other areas of child labor were considerably different in both kind and degree from that of newspaper distribution.

"The legislative decision to permit children to deliver newspapers while generally prohibiting their employment in other businesses is reasonably related to the legislative goal of preventing child labor abuses. It was certainly not unreasonable for the Legislature to effectuate the distinction by making it an exception to a general rule of prohibition. MCL 409.14; MSA 17.714 is valid." *Higgins v Monroe Evening News,* 70 Mich App 407, 418-419; 245 NW2d 769 (1976) (dissent).

The final, dispositive issue in this case is

whether the plaintiff was acting under a contract of hire with Frank Handler and, thus, an employee for purposes of the Worker's Disability Compensation Act, at the time he was struck by the automobile and seriously injured. Factually, it was established that Frank Handler promised reward of a dime, bottle of pop, or candy to the plaintiff if he helped deliver the newspapers. Other testimony indicated that the plaintiff had actually delivered at least one newspaper to a house on the day of the accident and that it was not the first occasion on which plaintiff had assisted in delivering defendant's newspapers. Based upon these facts, both Referee Ravary and the board found an assigned task (delivery of newspapers) and consideration offered (a dime, bottle of pop, or candy) amounting to a contract of hire.

However, the Court of Appeals majority reversed the compensation award:

"Certainly a literal reading of the statute in relation to the facts found by the board would incline us to find plaintiff an employee. However, we cannot follow this course where a literal interpretation would lead us to a result clearly contrary to the legislative intent.

\* \* \*

"On balance, we are convinced that the Workmen's Compensation Act was never intended to provide compensation for a person in the position of this plaintiff. Consequently, we hold, as a matter of law, that plaintiff was not employed by either the defendant or the substitute newsboy within the meaning of MCL 418.161(1)(b); MSA 17.237(161)(1)(b)." *Higgins, supra,* 413, 415.

We agree that under the circumstances of this case, an employment relationship did not exist between the parties. Although findings of ordinary facts are binding upon the Court if supported by

any evidence, finding the requisite contract of hire in the instant case involves reaching a legal conclusion. Therefore, the board's finding that a contract of hire existed between Handler and the plaintiff is reviewable by this Court.

The existence or non-existence of the requisite contract of hire can be gleaned from only one source—Frank Handler, the substitute newsboy. The following testimony is representative of Handler's explanation, on cross-examination, of plaintiff's participation in delivering newspapers:

"*Q.* And before you went out on the route, you didn't make any kind of an arrangement with him or make any kind of a deal where you said if you come on and help me with the papers, I'll pay you so much, did you?

"*A.* Let's see. I was at the house. Nicky and Danny were there.

"*Q.* What were they doing?

"*A.* I guess they were playing.

"*Q.* All right.

"*A.* And I asked them if they wanted to go on the paper route with me. I asked them if they wanted to go and I told them that if they wanted to—I mean I told them I'd give them a dime or something or I'd buy them something if they went and helped me. That was down by the landing, just by the side door.

"*Q. Now the reason that they were coming along with you is because your mother wanted to get them out of the house, isn't that true?*

"*A. Yes, I believe that, yes.*

"*Q.* Do you know why she wanted to get them out of the house?

"*A.* Yes, I think Robin was sick or something.

"*Q.* And who is Robin?

"*A.* My little sister.

"*Q.* So was that your mother's—it was at your mother's suggestion then that you asked them to get out of the house and come along, isn't that correct?

"*A.* Well, no. I don't think so. *She was going to get*

*them out of the house and it was—you know, I'd give
them something to do.* She never told me, you know,
why don't you take the kids with you, no.

"*Q.* Now what specifically did you tell them you were
going to give them at the time, if anything?

"*A.* I told them I'd give them a dime or buy them a
pop or something, candy bar.

"*Q.* Did you list all these alternatives or are you
saying that you might have offered or discussed one of
these things?

"*A.* Do you mean I just asked them? You mean just
told them I'd give them a dime or what?

"*Q.* What did you say? Did you give them a whole list
of things that you might do?

"*A. I told them if they wanted to go and help me I'd
give them a dime or buy them a pop or a candy bar.*

"*Q. And did you then buy a candy bar for Nicky?*
"*A. Afterwards?*
"*Q. Yes.*
"*A. No.*
"*Q. Did you give Nicky a dime afterwards?*
"*A. No.*
"*Q. You didn't give him anything, did you?*
"*A. No."* (Emphasis added.)

As previously stated, the referee and the board
majority found an assigned task (delivery of news-
papers) and consideration offered (a dime, bottle of
pop, or candy). From those two fact findings, the
board concluded that a contract of hire existed
between Handler and the plaintiff. This legal con-
clusion ignores a major principle of contract law.
Valid consideration for a contract cannot be pre-
sumed merely because two parties receive benefit
from each other. Rather, a bargained-for exchange
is required. The essence of consideration, there-
fore, is legal detriment that has been bargained
for and exchanged for the promise. Calamari, Con-
tracts (1st ed), § 53, p 105. The two parties must

have agreed and intended that the benefits each
derived be the consideration for a contract.

Thus, to reach the conclusion that a contract of
hire existed, we must be able to state that each of
the two parties, Handler and the plaintiff, in-
tended to suffer a detriment to receive a benefit,
and that they agreed to exchange those detriments
and benefits. It must be found that Frank Handler
promised payment to the boys in exchange for
their help in delivering papers, and that the plain-
tiff agreed to help deliver the papers because in
exchange he would receive a dime, bottle of pop, or
candy.

We cannot reach the legal conclusion that a
contract of hire existed between Handler and the
plaintiff upon accepting the factual findings of the
board and reviewing all the testimony. To the
contrary, Frank Handler's testimony illustrates a
social relationship, wherein he gratuitously prom-
ised to give the plaintiff a dime, bottle of pop, or
candy if he helped Handler in delivering the pa-
pers. Handler stated that the boys went along to
deliver the papers because his mother wanted the
children out of the house. Handler repeatedly used
the gratuitous term "give" when referring to the
boys. "I'd give them something to do." "I'd give
them a dime or buy them a pop or a candy bar."
Handler did not "give" his little brother Nicky
anything after delivering the papers on the day of
the accident, illustrating a gratuitous promise
rather than a contract of hire.

Arthur Larson's classic treatise on workers' com-
pensation law explains that normally the perform-
ance and acceptance of valuable service raises the
implication that payment for services is expected
and a contract of hire is formulated, however, in
at least three common situations, circumstances

negate the implication. 1A Larson, Workmen's Compensation Law, § 47.41.

The present facts fit within the framework of the second category: "minor children helping their parents or others without an express contract of hire". 1A Larson, Workmen's Compensation Law, § 47.41(b). This distinction is not predicated upon a bias against children but upon a common sense recognition of the nature of the relationship. The rationale for this category is understandable. Children frequently "help" neighbors and relatives run errands and do odd jobs, while receiving minor *gratuitous* rewards. Usually these associations are not based upon an employment relationship.

Although we view this unfortunate injury to the plaintiff sympathetically, we do not find the requisite contract of hire. The Court of Appeals is affirmed. Costs to appellee.

WILLIAMS and COLEMAN, JJ., concurred with BLAIR MOODY, JR., J.

RYAN, J. *(to affirm).* I agree with both Justices MOODY and KAVANAGH that the "street trade" exemption of the Hittle Juvenile Employment Act, MCL 409.14; MSA 17.714, does not constitute an unconstitutional denial of equal protection.

In addition, I agree with Justice MOODY that the Court of Appeals decision in this case, which found as a matter of law that plaintiff was not employed by either defendant or the substitute newsboy, must be affirmed. I reach that conclusion for a different reason, however.

While this Court is bound by the factual findings of the Workers' Compensation Appeal Board, Const 1963, art 6, § 28 and MCL 418.861; MSA 17.237(861), there is no evidence in the record of this case, or the facts found by the board, to

sustain the legal conclusion that plaintiff was
"* * * in the service of another, under any con-
tract of hire, express or implied * * *". MCL
418.161(1)(b); MSA 17.237(161)(1)(b). Consequently,
notwithstanding our compassion for this seriously
injured child, there is no entitlement to workers'
compensation benefits.

KAVANAGH, C.J. *(to reverse).*

### FACTS

This is a workers' compensation case in which
plaintiff appeals to this Court from an adverse
ruling in the Court of Appeals. 70 Mich App 407;
245 NW2d 769 (1976).

On February 4, 1966, Robert Edwards, the regu-
lar newscarrier for defendant Monroe Evening
News, arranged for his substitute, Frank Handler,
to complete a portion of his paper route. Accompa-
nied by his five-year-old brother, Nicholas, and his
brother's five-year-old friend, plaintiff Daniel Hig-
gins, Frank Handler set out to deliver papers.
While on the paper route five-year-old plaintiff
Higgins was struck by a car and is now, as a result
of his serious injuries, a paraplegic.

On August 24, 1968, plaintiff filed a petition for
benefits under the Worker's Disability Compensa-
tion Act. After the initial hearing, the referee held
that plaintiff was not entitled to compensation
because he had not been peddling papers and
hence was not an employee of the News at the
time of the accident. This decision was affirmed by
the Workmen's Compensation Appeal Board. The
Court of Appeals reversed and remanded for fur-
ther consideration. *Higgins v Monroe Evening
News,* 42 Mich App 301; 201 NW2d 665 (1972).

After hearing on remand, the referee held that

plaintiff had suffered a compensable injury as an employee of the News and awarded him benefits of $54 per week. On appeal, the board affirmed but limited plaintiff's benefits to $27 per week. Testimony taken during the hearing conflicted with respect to certain critical facts: (1) whether plaintiff Higgins at the time of the accident or at any other time had actually delivered papers for substitute Handler and (2) whether Handler had promised plaintiff compensation for his assistance. The board found affirmatively on both counts and said in its opinion:

"The testimony establishes that a promise of consideration in the form of remuneration by way of a dime, bottle of pop or some candy was made to plaintiff in return for his help in delivering newspapers and that this had not been the first time that plaintiff had helped." 1975 WCABO 456, 470.

The Court of Appeals again reversed, holding that the Worker's Disability Compensation Act "was never intended to provide compensation for a person in the position of this plaintiff". *Higgins v Monroe Evening News, supra,* 70 Mich App 415.

This Court granted leave to appeal to consider the following three issues.

## I

*Are factual findings of the Workmen's Compensation Appeal Board binding on a reviewing court?*

Michigan appellate courts will not disturb the factual findings of the Workmen's Compensation Appeal Board unless there is an absence of record support for those findings. *Carter v Kelsey-Hayes Co,* 386 Mich 610; 194 NW2d 326 (1972), *Braxton v*

*Chevrolet Grey Iron Foundry Division of General Motors Corp,* 396 Mich 685; 242 NW2d 420 (1976).

Const 1963, art 6, § 28 provides that "[f]indings of fact in workmen's compensation proceedings shall be conclusive in the absence of fraud unless otherwise provided by law". MCL 418.861; MSA 17.237(861) provides that:

"The findings of fact made by the board acting within its powers, in the absence of fraud, shall be conclusive. The court of appeals and the supreme court shall have power to review questions of law involved in any final order of the board, if application is made by the aggrieved party within 30 days after such order by any method permissible under the rules of the courts of the laws of this state."

In the instant matter the referee found, and the board affirmed the findings, that plaintiff was an employee of Frank Handler, who was an employee of Robert Edwards, who was an independent contractor hired by the defendant to deliver papers. Since there was evidence in the record to support these factual findings we will not disturb them.

## II

*Is the "street trade" exemption provision of the Hittle Juvenile Employment Act unconstitutional as a denial of equal protection?*

The hearing referee agreed with plaintiff's contention that because plaintiff was too young to secure a work permit, his employment was illegal and he was therefore entitled to double compensation under MCL 418.161(1)(b); MSA 17.237(161)(1)(b).

The Workmen's Compensation Appeal Board reversed that determination, finding plaintiff's em-

ployment legal under the "street trade" exemption
for newscarriers. MCL 409.14; MSA 17.714. Since
the majority opinion of the Court of Appeals found
as a matter of law no employment relationship
between plaintiff and defendant, the remaining
issues, including the instant one, were not ad-
dressed.

We agree with the appeal board's disposition
that plaintiff's employment was legal because it
falls within the "street trades" exemption to the
Hittle Juvenile Employment Act. Further, we find
no merit in the plaintiff's contention that the
"street trades" provision works a denial of equal
protection by denying all newscarriers the protec-
tion afforded other minors under the Hittle Juve-
nile Employment Act. Because we find his reason-
ing cogent, we adopt the position taken by Court of
Appeals Judge T. M. Burns in his dissenting opin-
ion:

"Legislation is invalid on equal protection grounds if
it creates classifications which are without reasonable
bases and are purely arbitrary. *Manistee Bank & Trust
Co v McGowan,* 394 Mich 655; 232 NW2d 636 (1975). It
is clear to me that there are rational bases for permit-
ting children under the age of 14 to work as paperboys
while generally prohibiting their employment in other
occupations. The working hours and conditions of chil-
dren who deliver newspapers are sufficiently distinct
from those in other industries in which children were
historically employed, and the perceived benefit of this
type of work experience for children properly supports
its encouragement. It is also reasonable to assume that
the health risks and employment abuses which existed
in other areas of child labor were considerably different
in both kind and degree from that of newspaper distri-
bution.

"The legislative decision to permit children to deliver
newspapers while generally prohibiting their employ-
ment in other businesses is reasonably related to the

legislative goal of preventing child labor abuses. It was certainly not unreasonable for the Legislature to effectuate the distinction by making it an exception to a general rule of prohibition. MCL 409.14; MSA 17.714 is valid." 70 Mich App 407, 418-419; 245 NW2d 769 (1976).

### III

*Did the Court of Appeals err in holding as a matter of law there was no employment contract between plaintiff and defendant?*

The Court of Appeals reversed an award of compensation ordered by the Workmen's Compensation Appeal Board, finding as a matter of law no employment relationship between the parties to this litigation.

Whether a contract of hire may be inferred from the conduct, language or other pertinent circumstances of a relationship is a matter of fact which may not be prescinded from the factfinder if any of the facts are in dispute. See *Chaffee v Stenger,* 361 Mich 57; 104 NW2d 805 (1960); *Holcomb v Bullock,* 353 Mich 514; 91 NW2d 869 (1958); and *Erickson v Goodell Oil Co, Inc,* 384 Mich 207; 180 NW2d 798 (1970).

The facts and legitimate inferences were in dispute here and the board resolved the dispute, finding a contract of employment existed.

The Court of Appeals majority refused to give effect to the literal language of the statute, saying:

"Certainly a literal reading of the statute in relation to the facts found by the board would incline us to find plaintiff an employee. However, we cannot follow this course where a literal interpretation would lead us to a result clearly contrary to the legislative intent." (Citations omitted.) 70 Mich App 413.

Without the assignment of any ambiguity in the

portion of the act they construe, the Court of Appeals nevertheless concluded that the Legislature could not have intended coverage of the plaintiff in this case.

As a general rule, statutory language is construed consistent with its plain meaning. Only when statutory language is found to be ambiguous are reviewing courts free to look to legislative intent in an effort to understand and give effect to the words used.

Here the Court of Appeals majority did not state what the "legislative intent" was nor how they determined it. Neither did they point out a basis for their conclusion that the finding of a contract of employment would be clearly contrary to it.

We have carefully considered *People v McFarlin,* 389 Mich 557, 563; 208 NW2d 504 (1973), cited by the Court of Appeals, and find it inapposite. We do not find the statute's definition of employee ambiguous:

"Every person in the service of another, under any contract of hire, express or implied, including * * * minors, *who shall be considered the same as* and have the same power to contract as adult employees." (Emphasis supplied.) MCL 418.161(1)(b); MSA 17.237(161)(1)(b).

Neither do we find it necessary to consider some unstated legislative intent.

An employment relationship does not turn on whether an employee depends upon the contract for his livelihood or whether his motive in entering into it was to obtain remuneration. Accordingly we reject defendant's argument that because plaintiff here was supported by his parents and was motivated by social rather than monetary considerations no contract of employment existed.

The tender age of plaintiff here should not influence the determination of employment, for the statutory direction that minors be considered the same as adult employees with the same power to contract makes age irrelevant.

Defendant's contention that the promise of "a dime, bottle of pop, or candy bar" cannot constitute consideration for a contract is also unpersuasive. Carriers delivering newspapers deal in pennies. Handler, the substitute carrier, was paid approximately $1.50 a day by Edwards for delivering papers. It is consistent with that scale of compensation that Handler's helpers would be paid smaller amounts for their less responsible and less time-consuming efforts.

There are other facts in the record which provide support for the board's finding that plaintiff is an "employee" within the meaning of the act.

The newspaper business relies primarily upon youngsters for door to door delivery. Testimony given at the hearing by the individual who acted as its treasurer, secretary and business manager established that the defendant, Monroe Evening News, required its regular carriers to find substitutes when they were unable to work.

"*Q.* So you do know that Bobbie Edwards is permitted to hire substitutes to go out and take care of his job for him?

"*A.* It is his responsibility to find somebody else to carry his route if he is not there.

"*Q.* You do not exercise any supervision over that activity?

"*A.* That is right.

"*Q.* He can have whoever he wants?

"*A.* That is right, he can have his grandmother.

"*Q.* And age is no bar?

"*A.* No, because we have no responsibility as to who

carries the paper. We go into a contract with whoever and it is up to him to find a substitute." 1975 WCABO 472-473.

The board properly found that the substitute carriers and helpers, such as Higgins, were part of defendant newspaper's distribution system. Defendant could have guarded against the use of very young helpers by limiting or supervising the carrier's authority to hire substitutes and helpers. The board observed:

"It is not our function to engage in an exercise in apologetics for the realities of the relationship created between defendant and its carriers. This looseness in method of operation is the creation and responsibility of defendant. Different rules could have been established but were not. Having created the system, defendant must assume responsibility for the legal consequences." 1975 WCABO 471-472.

We do not share the fear expressed by both defendant and the Court of Appeals that affirmance of the award in the instant matter will dangerously extend the act into an "entirely new dimension". 70 Mich App 414. We share the conviction expressed by the appeal board:

"Given the facts there is nothing astonishing or earthshaking about the result reached herein." 1975 WCABO 472.

The board's factual determination that a contract of employment existed between plaintiff and defendant warrants the award to plaintiff of benefits for injuries sustained in the course of his employment.

The judgment of the Court of Appeals is re-

versed and the award of the Workmen's Compensation Appeal Board reinstated.

Costs to appellant.

LEVIN and FITZGERALD, JJ., concurred with KAVANAGH, C.J.

LEVIN, J. *(to reverse)*. The act defines the term "employee" as meaning

"[e]very person in the service of another, under any contract of hire, express or implied, *including * * * minors,* who *shall be considered the same as* and have the same power to contract as adult employees." MCL 418.161(1)(b); MSA 17.237(161)(1)(b) (emphasis supplied).

Imposing on youngsters a higher burden of proof or persuasion and applying a more stringent standard of appellate review than for adults, as would the lead opinion, conflicts with the legislative directive that minors "shall be considered *the same as*" adult employees. (Emphasis supplied.)

Although the claimant in the instant case was not an adult, the question is "the same": was the claimant in the service of another under a "contract of hire"?

Age may not be considered as a factor "when determining whether an employment relationship exists".

I

The lead opinion states that there could be no "contract of hire" unless the substitute newsboy and Higgins "agreed" to an exchange of intended benefits and detriments, and unless Higgins so agreed "because" in exchange he would receive a dime, bottle of pop, or candy.

A workers' compensation claimant, adult or minor, need not, however, show either an "agreement" with his employer or that but for promised compensation he would not have performed the work. A contract of hire need not be bilateral, it may be unilateral: an offer of compensation which may be accepted by doing the expected work.

If such an offer is made and the expected work is performed, there is a contract of hire although there was no bilateral agreement and although the worker might have performed the work gratuitously, if asked to do so, out of a desire to be helpful or to satisfy some personal desire of participation in the enterprise or other motivation.

An employer who has offered compensation may not refuse to pay benefits to an injured worker who performed expected work because there was no bilateral agreement, nor may he seek to prove that the worker might have performed the work gratuitously if the employer had asked him to do so and had not offered or promised compensation.

Moreover, Higgins proved to the satisfaction of the WCAB that compensation was offered or promised, from which it would be reasonable to infer i) that it was thereby sought to induce him to work, ii) that he was thereby so induced, iii) that he worked "because" of such inducement, and iv) that such inducement and work were an intended exchange of "benefits" and "detriments".

Assuming that Higgins must show that he worked "because" of the offer or promise of compensation, it was for the WCAB, not this Court as a matter of law, to resolve that factual issue and in so doing draw the inferences in the application of the principles adverted to in the lead opinion to the evidence produced by the parties.

## II

The sense of the act[1] is that where the work of the principal (Monroe Evening News) is contracted out to an exempt or uninsured employer it is as responsible as if the injured worker has been "immediately employed" by it. Therefore to focus on the Handler-Higgins relationship is too narrow.

Newspaper publishing is a business that extensively employs youngsters to deliver to the door. Newscarriers indisputably are entitled to the benefits of the workers' compensation act; it is a question of fact, not of law, whether, at the time of injury, Higgins was engaged in such work under a contract of hire as part of the distribution system of the Monroe Evening News.

A newspaper employee testified that if a carrier was absent for a day, "[t]hey would ask him to either get a substitute or they would replace him". He also said "when they can't deliver the papers, it is up to them to find a substitute". "[H]e can have his grandmother." A practice developed of using helpers. The newspaper did not limit carrier authority to hire substitutes and helpers, nor did it supervise the hiring.

In the situations adverted to in the lead opinion, where claimants who contributed their services were denied compensation, the entire class of workers to which the injured worker belonged were regarded as volunteers who worked gratuitously.[2] Higgins, in contrast, was doing the same work that others who would be entitled to benefits

[1] See MCL 418.171; MSA 17.237(171), concerning the liability of an employer who contracts with another person.

[2] In *Hall v State Compensation Insurance Fund,* 154 Colo 47; 387 P2d 899 (1963), where it was held that a Blue Lady "was rendering services as a volunteer", Blue Ladies as a group were held to be exempt, not a particular Blue Lady.

Similarly, see *Enderby v Industrial Commission,* 12 Wis 2d 91; 106 NW2d 315 (1960).

were doing. It is not appropriate to deny benefits
as a matter of law because Higgins was younger
and what he was to receive was of lesser value or
because there would be no coverage had he been
doing like work for a friend or neighbor rather
than as part of the newspaper's distribution sys-
tem.

The expressed concern about workers' compensa-
tion liability being imposed upon parents or neigh-
bors for household chores performed by youngsters
is misplaced; under the act "no private employer"
is liable to any person who is employed by him as
a "household domestic servant for less than 35
hours per week for 13 weeks or longer during the
preceding 52 weeks" and a "wife, child or other
member of the employer's family residing in the
home" is specifically excluded from the definition
of "household domestic servant".[3]

The question whether exceptions should be
made to the general scope of coverage for service
at charitable or patriotic institutions has been the
subject of legislation in a number of states and of
judicial opinions reaching varying results in the
same and differing factual situations.[4]

The Court need not today intimate a view re-
garding the scope or legitimacy of exceptions for
social situations, or where the service is rendered
to a charitable or patriotic organization. The impli-
cation of broad and undefined exceptions into the

---

[3] MCL 418.118; MSA 17.237(118).

[4] See 81 Am Jur 2d, Workmen's Compensation, §§ 116 *et seq.,* pp
801 *et seq.;* 99 CJS, Workmen's Compensation, §§ 69 *et seq.,* pp 285 *et
seq.*

The exception adverted to in one of the cases cited in the lead
opinion is statutory, *Camphill Village USA, Inc v Workmen's Com-
pensation Board,* 23 NY2d 202; 243 NE2d 739; 296 NYS2d 129 (1968);
and in another case the court declared that a *factual finding* that the
services were not undertaken pursuant to a contract of hire should be
sustained, *Enderby v Industrial Commission, supra.*

workers' compensation jurisprudence of this state is inappropriate. The business of publishing a newspaper has none of the earmarks of a social, charitable or patriotic undertaking. It is not expected that anyone, even if young or very young, will deliver newspapers gratuitously.