# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## COMMONWEALTH OF VIRGINIA v. POUNDING MILL QUARRY CORPORATION.

March 10, 1975.

Record No. 740410.

Present, All the Justices.

*J. Durwood Felton, III, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for appellant.

*Wilburg L. Hazlegrove (Alexander I. Saunders; Hazlegrove, Dickinson, Smith & Rea,* on brief), for appellee.

Harman, J., delivered the opinion of the court.

This is an appeal from a final order of the trial court, in a proceeding under Code § 58-1130 *et seq.*, which exonerated and ordered repayment to Pounding Mill Quarry Corporation (the taxpayer) of sales taxes in the amount of $35,887.48 and interest

in the amount of $2,153.25, a total sum of $38,040.73. The taxpayer had paid a larger sum, under protest, to the Commonwealth under an assessment by the Department of Taxation, following an audit of the taxpayer's records.[1] The Commonwealth assigns error to the trial court's exoneration of the taxes. The taxpayer assigns cross-error to the failure of the trial court to exonerate and order repayment of sales taxes in the amount of $2,575.44 and interest in the amount of $154.53, a total sum of $2,729.97, on sales of agricultural lime to one of the taxpayer's customers, Bowers, who engaged in the business of spreading lime on the Virginia farmlands of other persons.

The facts are not in dispute. The taxpayer operates two stone quarries in Tazewell County where it produces and sells crushed limestone aggregates (stone) and agricultural lime. After the Virginia Retail Sales and Use Tax Act (the Act), Code § 58-441.1 *et seq.*, became effective on September 1, 1966, the taxpayer, who registered as a dealer under the Act, notified its customers that sales taxes would be charged and collected on sales unless the customer filed an appropriate exemption certificate with the taxpayer. Between December 1, 1967, and December 31, 1971 (the audit period), the taxpayer sold and delivered more than nine hundred thousand dollars worth of stone to three West Virginia corporations (contractors). The contractors, who were engaged primarily in highway paving and construction, took delivery of the stone in their trucks at one of taxpayer's quarries in Virginia and immediately transported it to West Virginia where the stone was used by the contractors in their operations.

In October, 1966, each of the contractors furnished the taxpayer with a certificate of exemption on Department of Taxation Form ST-14. This form entitled "Sale and Use Tax Certificate of Exemption" provides, in pertinent part:

"(This certificate of Exemption is for use exclusively by OUT-OF-STATE DEALER who purchases tangible personal property in Virginia for immediate transportation out of the Commonwealth of Virginia in his vehicle for resale outside this state)

\* \* \*

---

[1] Several items in the assessment by the Department of Taxation were not challenged by the taxpayer.

*"Information for Virginia supplier* — A separate Certificate of Exemption, properly executed by the out-of-state dealer, must be obtained from each out-of-state dealer by the Virginia supplier and attached to each invoice covering each sale of items of personal property to the out-of-state dealer for immediate transportation outside this State in the dealer's vehicle for resale outside the State. This certificate must not be accepted by the Virginia supplier unless proof of the registration or license number held by the out-of-state dealer is furnished the Virginia supplier."

The forms furnished to the taxpayer by the contractors were regular upon their face except that the property "purchased from the . . . supplier . . . for immediate transportation out of the Commonwealth of Virginia in his own vehicle for resale outside Virginia" was not described in the space provided in the form for such description. The parties agree, however, that all of the taxpayer's sales to the contractors were of stone.

From October, 1966, until January, 1972, when the audit was being made, the taxpayer, relying upon the certificates, failed to collect sales taxes on the purchase price of the stone delivered to the contractors. For each month during the audit period the taxpayer filed with the Department of Taxation the monthly report required by Code § 58.1-441.20, showing total sales, taxable sales and exempt sales, and paid the tax on taxable sales as computed in each report. Exempt sales, as reported, constituted a substantial part of the taxpayer's total sales during each of the reporting periods.

On January 21, 1972, while the audit of the taxpayer's records was in progress, the taxpayer was notified, in writing, by the auditors that the certificates filed by the contractors were cancelled retroactively to the dates on which they were executed. Subsequently, the Department of Taxation granted an exemption to the taxpayer for sales, during the audit period, to the contractors of $26,915.85 which the auditors ascertained "were specifically covered by the exemption certificates [in question], which the Commonwealth determined could have been taken in good faith."

In its opinion the trial court found that the taxpayer had accepted the certificates in good faith and that the language set forth in the certificates in the paragraph entitled "Information

for Virginia Suppliers" could reasonably be construed to provide a blanket exemption covering all sales to the contractors by the taxpayer.

In determining whether these sales are exempt from taxation under the Act, we must keep in mind that taxation is the rule and not the exception, and that statutory tax exemptions are strictly construed against the taxpayer, with doubts resolved against the exemption. *Commonwealth* v. *Research Analysis Corp.*, 214 Va. 161, 163, 198 S.E.2d 622, 624 (1973). The Act incorporates this rule in Code § 58-441.17 which provides, in pertinent part:

> "(a) All sales or leases are subject to the tax until the contrary is established. The burden of proving that a sale . . . of tangible personal property is not taxable is upon the person who makes the sale . . . unless he takes from the purchaser . . . a certificate to the effect that the property is exempt under this chapter.

> "(b) The certificate mentioned in this section shall relieve the person who takes such certificate from any liability for the payment or collection of the tax, except upon notice from the Commissioner that such certificate is no longer acceptable. Such certificate shall be signed by and bear the name and address of the purchaser or lessee, shall indicate the number of the certificate of registration (if any) issued to the purchaser, or lessee, shall indicate the general character of the personal property sold . . . (or to be sold . . . under a blanket exemption certificate) and shall be substantially in such form as the Commissioner may require."

While we accept the trial court's finding that these certificates were accepted in good faith, we do not agree with its holding that the language of the certificates could reasonably be construed as a blanket exemption, an exemption covering both the sale made at the time the certificate was received and future sales. Each of the certificates, on its face, covers only a single sale or transaction. The certificates refer to property *sold*, not to property *to be sold*. The paragraph entitled *"Information for Virginia Supplier"* requires a *separate certificate*, properly executed, to be attached to *each invoice* covering *each sale* to the out-of-state dealer. The certificates, therefore, purport to cover only a single sale or transaction and, regardless of good faith on

the part of the taxpayer, exempt only that sale or transaction. Thus the taxpayer is not entitled to rely upon these certificates to relieve it of tax liability on the later sales which are at issue here.

Since the taxpayer is not entitled to rely on the certificates to exempt it from tax liability on the later sales to the contractors, we must now determine whether the taxpayer has carried the burden of showing that the sales in question are otherwise exempt from taxation. Code § 58-441.17(a). The parties agree that the stone was sold and delivered in Virginia. Because Code § 58-441.4 imposes the tax upon all sales at retail unless otherwise exempt by law, the question becomes whether the sales by the taxpayer fall within one of those exemptions.

Code § 58-441.2(c) defines "sale at retail" as a sale for any purpose other than resale. Under Code § 58-441.15 any person who contracts to perform construction with respect to real estate and, in connection therewith, to furnish tangible personal property, is deemed to have purchased such tangible personal property for use or consumption and not for resale. The State Tax Commissioner, in rules and regulations adopted pursuant to Code § 58-441.41 of the Act, provided "that tangible personal property incorporated in real property construction which loses its identity (status) as tangible personal property is deemed to be tangible personal property used or consumed by the contractor. Any sale . . . to . . . such a contractor is deemed a sale . . . to . . . the ultimate consumer (the contractor), and not for resale by the contractor; and the dealer (supplier) making the sale . . . to . . . such a contractor is obligated to collect the tax from him. . . ." § 1-27, Virginia Retail Sales and Use Tax Rules and Regulations (Department of Taxation, 1966). A subsequent amendment to these rules and regulations specifically provided:

". . . Highway contractors are classified as ultimate users or consumers of all tangible personal property they may purchase, and are required to pay the sales tax to their suppliers on all such purchases." § 1-27.1(b), Virginia Retail Sales and Use Tax Rules and Regulations (Dept. of Taxation, 1969).

■ The taxpayer argues that it should be exempt from the sales tax because the property was not used or consumed in Virginia but was immediately transported to West Virginia

where it was used or consumed. The Act, however, exempts only "[d]elivery of tangible personal property outside this State for use or consumption outside this State." Code § 58-441.6(r). Since both sale and delivery occurred in this state, Virginia could have validly imposed a sales tax upon such a sale even though the parties knew that the purchaser intended to immediately transport the property to another state and use it there. *Internat'l Harvester Co.* v. *Dept. of Treasury,* 322 U.S. 340, 345 (1944).

The taxpayer also argues that the sale is exempt because the stone was immediately transported to West Virginia "where the materials were resold and exclusively used and consumed." The difficulty with this argument is that the record shows only that the stone was sold and delivered in Virginia and immediately transported by the contractors to West Virginia where it was used by the contractors in their respective businesses. That the contractors were dealers and that the stone was resold by the contractors, both of which must be shown for the sale to be exempt under the regulation relied on by the taxpayer,[2] is not established by the record. Accordingly we hold that the taxpayer, having failed to carry its burden of proof, is not entitled to have such sales declared exempt.

Now we must consider the issue raised by the cross-appeal of the taxpayer. The facts in regard to these transactions are likewise undisputed, having been stipulated by the parties.

The taxpayer sold and delivered agricultural lime to its customer, Bowers, who transported this lime from the quarry to Virginia farmlands of others where he spread it on the land. Bowers, who paid the taxpayer for the lime, was not registered as a dealer under the Act and no exemption certificates covering these sales were delivered by him to the taxpayer. Bowers billed the landowners on a per acre basis making one charge for each acre of land treated by him with lime. A percentage of Bowers' charge was generally paid by the United States Department of Agriculture. Bowers' bills did not separately state what was charged for the lime and what was charged for transporting and spreading it.[3]

---

[2] § 1-51(d), Virginia Sales and Use Tax Rules and Regulations (Dept. of Taxation, 1969), which republished this regulation as adopted in 1966, § 1-51(d), Virginia Sales and Use Tax Rules and Regulations (Dept. of Taxation, 1966).

[3] A different question would have been presented had Bowers separately billed the charges for the lime and the charges for his services.

Here the taxpayer argues that the sale was exempt under Code § 58-441.6(c) which exempts, among other things, liming materials ". . . provided they are sold to and purchased by farmers for use in agricultural production for market." Since Bowers was not a farmer, the lime sold to him was not "sold to and purchased by farmers" and thus exempt under this section.

Conceding that Bowers was not a registered dealer and that he did not provide the taxpayer with exemption certificates covering the lime sales in question, the taxpayer argues that it has carried the burden of showing that Bowers purchased the lime for resale, that the resale was to farmers exempt from taxation under Code § 58-441.6(c), and thus the sale to Bowers was not a retail sale under Code § 58-441.2(c). This subsection defines "retail sale" or "sale at retail" as ". . . a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property or services taxable under this chapter . . . provided, that sales for resale must be made in strict compliance with rules and regulations made under this chapter. . . ."

Code § 58-441.2(e) provides that "retail sales" and "sales at retail" shall include sales to persons who are engaged in "essentially service businesses," as was the case with Bowers here.

Bowers was not a registered dealer and his services, as such, were not otherwise taxable under the act. Because he was a contractor providing ". . . service with respect to real estate . . ., and in connection therewith to furnish tangible personal property . . .," he is deemed to have purchased such tangible personal property for use or consumption and not for resale, Code § 58-441.15(a). We, therefore, agree with the trial court that such sales to Bowers are taxable rather than exempt.

For these reasons the decree of the trial court ordering repayment of taxes and interest on the sales to the contractors is reversed and set aside and a decree will be entered here denying the relief sought by the taxpayer on those assessments. That part of the trial court's decree denying relief from the assessments of taxes and interest on sales to Bowers is affirmed.

*Reversed in part, affirmed in part and final decree.*