COMMONWEALTH OF VIRGINIA, DEPARTMENT OF TAXATION

V.

MILLER-MORTON COMPANY

February 29, 1980.

Record No. 780215.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*John G. MacConnell, Assistant Attorney General (Marshall Coleman, Attorney General; Kenneth W. Thorson, Assistant Attorney General; Norman K. Marshall, Assistant Attorney General,* on briefs), for appellant.

*Carle E. Davis (Joseph C. Wool, Jr.; Henry H. McVey, III, McGuire, Woods & Battle,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

In this case, we review a trial court's ruling that certain tangible personal property stored in Virginia and eventually distributed outside this State was exempt from taxation under the Virginia Retail Sales and Use Tax Act (the Act), Chapter 8.1 of Title 58 of the Code.

## I.

The taxpayer, Miller-Morton Company (M-M), manufactures pet care products and purchases health and beauty aid products manufactured by others. M-M stores these products in its Richmond central warehouse for resale to wholesalers and mass merchandisers. The marketing operation is divided into four geographical regions. Products marketed in the Richmond region, comprising Virginia and certain other southern and eastern states, are shipped directly from the central warehouse for delivery to M-M's customers. In the other regions, the products are shipped from the Richmond warehouse to regional warehouses where they are stored pending sale to regional customers.

For promotional purposes, M-M distributes some products as free samples. In the Richmond region, samples are taken directly from inventory at the warehouse and sent to the ordering salesmen; in other regions, samples are withdrawn from inventory stored in the regional warehouses for distribution by salesmen. M-M fixes no quota for free

samples. During the period in question, September 1966 through December 1971, such samples fluctuated between one-tenth and one-half of one percent of the taxpayer's inventory.

In addition to the complimentary samples, this case involves articles described in the court below as permanent pet center racks, disposable free-standing racks, disposable dual purpose packages, and dog care booklets. For convenience only, we will refer to such articles, all of which M-M purchased outside Virginia, as "accessories". M-M transfers these accessories, with related products, to its customers without designating a charge especially for the accessories.

Upon auditing M-M's sales and use tax returns for the period in question, the Department of Taxation assessed taxes and penalties amounting to $39,031.14 based upon M-M's dominion over free samples and accessories distributed to customers outside Virginia. Under Code § 58-1130, M-M applied to the circuit court for correction of the assessment. By final judgment entered November 16, 1977, the court granted the application and ordered the Department to refund the full amount of the assessment plus interest.

## II.

■ To resolve the issues in this case, we look first to the taxing scheme embodied in the Act. It will be seen that the sales and use taxes, though technically two distinct taxes, are, in effect, complementary components of one levy upon commerce.

Code § 58-441.4 imposes the sales tax, "a license or privilege tax", upon persons who (1) engage "in the business of selling at retail or distributing tangible personal property in" Virginia, (2) rent or furnish "any of the things or services taxable under" the Act, (3) store any item of tangible personalty "for use or consumption in" Virginia, or (4) lease or rent such property in Virginia. The tax is levied as a percentage of the consideration for the taxable goods or services. That consideration is given different names depending upon the nature of the transaction involving the goods or services. In the case of retail sales or distributions of tangible personalty in Virginia, the tax is a percentage of the "sales price". Code § 58-441.4(a). When the taxable event is the storage of tangible personalty in this State for use or consumption in Virginia, the tax is based upon the "cost price". Code § 58-441.4(c). Clearly, since the tax is a percentage of a price, a commercial transaction is a prerequisite to imposition of the tax. But the tax is not incidental to every transaction. Except in extraordinary cases, see Code § 58-441.2(e), a sale of property for the purpose of

resale is not a "retail sale", Code § 58-441.2(c), and therefore is not subject to the tax. Nor does the tax apply if property is acquired to be utilized in certain ways to make or prepare tangible personalty for sale or resale. Code § 58-441.6. Thus, generally speaking, the transaction precedent to imposition of the tax is that which transfers the property to what may loosely be called the ultimate purchaser in the chain of commerce. *See Jefferson* v. *Tax Comm.,* 217 Va. 988, 992, 234 S.E.2d 297, 301 (1977); *Commonwealth* v. *Bluefield Sanitarium,* 216 Va. 686, 688-89, 222 S.E.2d 526, 528 (1976).

The use tax is imposed upon "the use or consumption of tangible personal property in this State, or the storage of such property outside the State for use or consumption in this State", Code § 58-441.5, *if* the property was purchased outside Virginia and "would have been subject to the sales tax if it had been purchased within this State", Virginia Retail Sales and Use Tax Rules and Regulations § 1-109 (hereinafter, "Sales Tax Reg."). *See* Code §§ 58-441.5, -441.9. The use tax also applies if the purchase was made in Virginia but the sales tax was not paid. Sales Tax Reg. § 1-109. Based on the "cost price", the use tax is computed at the same percentage rate as the sales tax; only one of the two taxes can be applied to a transaction. Code § 58-441.5(d). A person who has paid a "similar tax" in another State on the purchase or use of property purchased outside Virginia is entitled to a credit against the tax on the use of that property in Virginia. Code § 58-441.8. Manifestly, the primary purpose of the use tax is to prevent the sales tax from placing Virginia retailers at a competitive disadvantage with retailers outside Virginia. Hence, the sales and use taxes combine to form a uniform levy.

### III.

Pertinent to the case at bar, the Act provides for certain exclusions from and exemptions to the sales and use taxes. As we mentioned before, no sales tax, and consequently no use tax, is imposed if tangible personalty is purchased for resale. And Code § 58-441.6 provides that the terms " 'sale at retail,' 'lease or rental,' 'distribution,' 'use,' 'storage' and 'consumption' shall not include", *inter alia,* (1) "materials, containers . . . [and] boxes . . . for future use for packaging tangible personal property for shipment or sale" or (2) "[d]elivery of tangible personal property outside this State for use or consumption outside this State."

M-M contended below that the product samples and accessories were not subject to sales and use taxation because of the delivery out-

side Virginia exemption. Regarding the samples, the taxpayer also maintained that they had been part of the mass of goods held for resale until removed from inventory, a step that for products distributed in the three regions other than the Richmond region did not occur in Virginia. In addition, M-M asserted that the permanent pet center racks, disposable free-standing racks, and disposable dual purpose packages had in fact been sold and thus had been held in Virginia for resale. Finally, M-M claimed that the disposable racks and packages qualified for the packaging exemption.

The trial judge did not reach the packaging exemption claim or the issue whether M-M had sold certain of the accessories. The court did rule that the product samples are "nontaxable while they sit in the [Richmond] warehouse, and are exempt from the use tax when they are delivered . . . for transportation out of Virginia for use and consumption out of Virginia"; that M-M's handling of the samples (including storage, withdrawal from inventory, and repackaging for shipment) in Virginia was an integral part of the delivery outside Virginia; that, as a result, the samples were "not subject to the use tax"; and that "what has been said above in regard to samples is also applicable to the [accessories]."

The parties agree that so long as a person intends to resell taxable property, no tax can be imposed under the Act. Thus, the critical portion of the circuit court's decision is the implied holding that once a person owning tangible personalty in Virginia decides to deliver that property outside Virginia, any use of that property in Virginia related to that delivery is exempt from taxation under the Act. We believe the court erred.

## IV.

We first consider the tax status of the product samples.

The Department contends that, because M-M knew some of its inventory would be given away, the samples were not intended for resale. We disagree. Until M-M processed its salesmen's orders for samples, those products were indistinguishable from all other products in M-M's inventory. No products were samples until withdrawn from inventory; all products were equally intended for resale. This is especially true since the taxpayer prescribes no particular amount of products for complimentary distribution. Furthermore, to require the taxpayer to pay tax based on an estimate of the goods to be given away would create an unduly harsh administrative burden. For example, such a requirement would no doubt result in the need for amended

tax returns necessitating either refunds or additional payments as the percentage of inventory converted into samples fluctuated. We hold that, until M-M separated products to be given away from its inventory, such products were intended for resale.

In view of this holding, we must distinguish between the samples distributed in the Richmond region and those distributed in the other three regions. These latter products were shipped as inventory from Richmond to warehouses outside Virginia. There, the products retained the "for resale" status until removed from inventory. While in Virginia, these products were never purchased or stored for a purpose other than resale. Consequently, they were not subject to Virginia sales and use taxes.

The samples distributed in the Richmond region, on the other hand, were removed from inventory in Virginia with the intent that they be given away. The "for resale" status terminated at that time. However, M-M maintains, as the trial court held, that the delivery outside Virginia exemption then applied to the products because they were intended for distribution outside Virginia. We reject this position.

Exemptions from taxation are to be strictly construed against the taxpayer. *E.g., Webster v. Department of Taxation,* 219 Va. 81, 84, 245 S.E.2d 252, 254 (1978). The exemption relied upon by M-M is for "[d]*elivery* of tangible personal property outside this State for use or consumption outside this State." Code § 58-441.6(r) (emphasis added). It is the act of delivery under the prescribed circumstances that is exempt from taxation. Yet, despite the rule of strict construction, M-M would have this Court interpret the exemption to cover the *holding* of goods in Virginia *for delivery* outside this State. The language of the statutory provision upon which the taxpayer relies does not warrant such an interpretation. Nor does the purpose of the exemption, which is obviously intended to avoid the possible constitutional problems involved in taxing interstate sales.[1] *See generally Harvester Co. v. Dept. of Treasury,* 322 U.S. 340 (1944); *McLeod v. Dilworth Co.,* 322 U.S. 327 (1944); *McGoldrick v. Berwind-White Co.,* 309 U.S. 33 (1940); *Henneford v. Silas Mason Co.,* 300 U.S. 577 (1937). If a taxable event occurs in Virginia, subsequent delivery of property outside this State does not immunize the taxable event. *See Commonwealth v. Pounding Mill Quarry,* 215 Va. 647, 212 S.E.2d 428 (1975).

---

[1] The requirement that the delivery be for use or consumption outside Virginia exists to prevent avoidance of taxation through out-of-state delivery. Of course, when property is delivered outside Virginia for use or consumption in this State, the use tax comes into play.

Because M-M is not entitled to the exemption claimed, the question becomes whether a taxable event has occurred in Virginia. Code § 58-441.17(c) provides:

"If a purchaser . . . who gives a certificate [of exemption from sales tax] . . . makes any use of the property other than an exempt use or retention, demonstration, or display while holding property for resale, distribution,[2] or lease . . . such use shall be deemed a taxable sale by the purchaser . . . as of the time the property . . . is first used by him, and the cost of the property to him shall be deemed the sales price of such retail sale."

This provision governs cases where goods have been purchased in Virginia. Under § 58-441.17(c), a purchaser who converts to his own non-exempt use property purchased for resale is recognized as the ultimate purchaser in the chain of commerce. Hence, his purchase is treated as a transaction subject to the sales tax. Since the use tax applies to the use or consumption in Virginia of property that would have been subject to the sales tax had the property been purchased in Virginia, the use tax applies when property purchased outside Virginia and held in Virginia for resale is used in a manner proscribed by § 58-441.17(c).

A "use" is "the exercise of any right or power over tangible personal property incident to the ownership thereof, except that it does not include the sale at retail of that property in the regular course of business." Code § 58-441.3(h). When M-M withdrew products from inventory in Virginia for free disposition to customers in the Richmond region, M-M exercised a power incident to ownership of the products. This use of products previously held for resale is not a use permitted by § 58-441.17(c). Therefore, M-M's purchases of these products are deemed retail sales. When the products lost their "for resale" status, M-M became the ultimate purchaser. For products purchased within Virginia, M-M is liable for sales tax; for products purchased outside Virginia, M-M is liable for use tax.[3] We conclude that the trial court erred in ruling that M-M's use in Virginia of product samples distributed in the Richmond region is exempt from taxation under the Act.

Now we consider the tax status regarding the accessories. For

---

[2] The term "distribution" does not include a free distribution but contemplates a transaction subject to the sales tax. *See* Code §§ 58-441.3(e), -441.4(a).

[3] M-M has not suggested that products it manufactured should be distinguished from those purchased.

the reasons given in our discussion of the product samples, the delivery outside Virginia exemption is of no avail to the taxpayer. M-M undoubtedly "used" these accessories in Virginia. Because they were purchased outside Virginia, the use tax applies unless M-M's use in Virginia comes within an exemption.

M-M contends that it sold all the accessories, except the dog care booklets, and that consequently these accessories enjoyed "for resale" status. And as to the disposable racks and dual purpose packages, the taxpayer also invokes the packaging exemption. As noted above, the trial court did not decide the issues pertaining to these claims of exemption, and they are not ripe for appellate review. Accordingly, the case will be remanded for adjudication of these issues.

We find in the record no claim of any exemption (other than delivery outside Virginia) pertaining to the dog care booklets. Thus, we hold that the Department did not erroneously assess tax upon the use of the booklets.

In summary, we affirm the judgment insofar as it pertains to product samples distributed in regions other than the Richmond region, and we reverse the judgment in all other respects. We will remand the cause for determination of the issues previously raised but not decided below and for correction of the assessment.

*Affirmed in part, reversed in part, and remanded.*