**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JUNE 4, 2002**

GENERAL MOTORS CORPORATION,

    Plaintiff-Appellant,

v                      No. 116984

DEPARTMENT OF TREASURY,
REVENUE DIVISION,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

    Plaintiff, General Motors Corporation (GM), appeals from the Court of Appeals decision that defendant, Department of Treasury, could impose use tax[1] on the vehicle components and parts plaintiff provided to customers as part of plaintiff's goodwill adjustments policy. We reverse the decision of the Court of Appeals and hold that assessment of use tax on the goodwill adjustments was improper because they were taxed

_____

[1]Use Tax Act, 1937 PA 94, MCL 205.91 *et seq.*

pursuant to the General Sales Tax Act[2] when customers purchased vehicles at retail.

                              I

When customers purchase new GM automobiles, they are provided with a GM limited manufacturer's warranty. These limited manufacturer's warranties provide, in pertinent part, for the replacement of defective parts of the automobile under certain circumstances. They also generally provide coverage for an expressly stated length of time, subject to earlier expiration, if the vehicle is driven for a certain number of miles. The department acknowledges that parts provided under these limited warranties are not subject to use tax because the customers paid for the right to replacement parts under the warranties at the time of the retail sale.

In addition to the limited warranties, GM provides a more open-ended "goodwill" adjustment policy under which GM will, on a discretionary basis, pay for replacement parts for GM vehicles even after the limited warranty period has expired. Although not referred to by name as a "goodwill adjustment policy," notice of this policy is contained in the General Motors warranty manual provided to customers at the time of sale. In this regard, the manual provides:

---

[2]1933 PA 167 as amended, MCL 205.51 *et seq.*

Should you ever encounter a problem during *or after* the warranty periods that is not resolved, talk to a member of dealer management. If the problem persists, follow the additional procedure outlined in "Owner Assistance," on page 16 of this booklet. [Emphasis added.]

The Owner Assistance section of the manual outlines a "Customer Satisfaction Procedure." It states that problems will "normally" be resolved by the dealer's sales or service departments.[3] However, if a concern is not resolved at that level, the manual recommends first discussing the problem with the dealership management. If the problem is not resolved by the dealer management, customers are told to contact GM directly. A customer dissatisfied with the outcome of the procedure may elect arbitration. The manual states that, while a customer is not bound to accept the result of the

---

[3]General Motors, in a bulletin to its dealers, directs them to make goodwill adjustments case by case "where special consideration is in order to enhance customer satisfaction and loyalty." GM provides the dealers with a recommended set of guidelines for goodwill policy adjustments to help them distinguish defects in materials and workmanship from defects caused by aging, physical damage, lack of proper maintenance, or owner abuse.

Testimony revealed that GM estimates the cost of, and establishes a budget reserve for, both warranty repairs and goodwill adjustments for the lifetime of every make and model of vehicle. Twice annually, GM internally audits both the cost of warranty repairs and that of the goodwill policy for each make and model of vehicle. A GM representative explained that the vehicle sales price is designed to recover all costs, including those associated with the goodwill adjustment policy, as well as to maintain profitability.

arbitration proceeding, GM will "generally" agree to be bound by it even though it reserves the right to terminate its participation in the arbitration program.[4]

The department conducted an audit of GM's compliance with Michigan tax laws for the period of January 1, 1986, through December 31, 1992. As a result of the audit, the department assessed against GM use taxes and interest of $5.5 million on the vehicle components and parts provided by GM to customers as goodwill adjustments. The department had not previously assessed such a tax. During the audit period, GM customers in Michigan obtained $82 million in components and parts under the goodwill policy.

GM appealed the assessment to the Court of Claims. In pertinent part, GM alleged that the department lacked the statutory authority to impose use tax on goodwill adjustments because sales tax was imposed on the cost of the goodwill adjustments when vehicles were sold at retail. However, the Court of Claims disagreed with GM's position and granted summary disposition in favor of the department pursuant to MCR 2.116(C)(10), holding, in relevant part, that the transfer of

---

[4] We note the possibility of arbitration merely to provide a comprehensive outline of the complaint resolution procedure. In light of our analysis, it is not necessary to consider whether the possibility of arbitration is a form of "consideration" in this case.

4

parts under the goodwill program is subject to use tax. The Court of Appeals affirmed regarding this issue[5], concluding that "plaintiff's dealers were not obligated to provide all customers with goodwill adjustments" and, therefore, that the "value of the goodwill program was not included in the gross proceeds arising from the retail sales of plaintiff's vehicles."[6] The Court of Appeals also emphasized its view that the purchasers of GM vehicles did not obtain "any enforceable rights in the goodwill program." We granted leave to appeal.

## II

Because the essential facts are not in dispute, we are presented with a question of law: whether replacement parts provided to customers at GM's expense through the goodwill program are independently subject to Michigan's use tax in connection with the transfer of the parts. We review questions of law de novo. *Kelly v Builders Square, Inc,* 465

[5] However, the Court of Appeals would have reversed the Court of Claims in part and remanded for further proceedings with regard to GM's constitutionally based arguments that it was denied equal protection of the laws and the benefit of uniformity of taxation because the department did not apply the use tax in the same way to other similarly situated parties. In light of our conclusion that the transactions at issue are not subject to the use tax as a matter of statutory law, it is unnecessary to reach these constitutional issues.

[6] Unpublished opinion per curiam, issued May 9, 2000 (Docket No. 213186).

Mich 29, 34; 632 NW2d 912 (2001). This is the same standard of review applicable to the grant of a motion for summary disposition. *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001).

III

The sales tax and the use tax are interrelated. Sales tax is imposed by the General Sales Tax Act (GTA) on the gross proceeds of a business. MCL 205.52(1). The GTA defines "[g]ross proceeds" as the "amount received in money, credits, subsidies, property, or other money's worth in consideration of a sale at retail . . . ." MCL 205.51(1)(i). In contrast, pursuant to the Michigan Use Tax Act (UTA), use tax is generally imposed on the privilege of "using, storing, or consuming tangible personal property." MCL 205.93(1).

GM contends that the cost of its goodwill adjustments is exempt from use tax under § 4(1)(a) of the UTA. MCL 205.94(1)(a) provides that "[p]roperty sold in this state on which transaction a tax is paid under the general sales tax act" is exempt from the use tax "if the tax was due and paid on the retail sale to a consumer." Thus, our inquiry is whether "tax was due and paid" pursuant to the GTA on the cost of the goodwill adjustments when vehicles were sold at retail.

The sales and use taxes, while imposed in different ways, do not operate in isolation. Rather, provisions of the UTA

6

and the GTA are supplementary and complementary. *World Book, Inc v Treasury Dep't*, 459 Mich 403, 408; 590 NW2d 293 (1999); *Elias Bros Restaurants, Inc v Treasury Dep't*, 452 Mich 144, 153; 549 NW2d 837 (1996). UTA § 4(1)(a)'s exemption is an expression of a legislative intent to avoid pyramiding of sales and use tax. *Elias Bros, supra.* In other words, a transfer of property that has already been subjected to Michigan's sales tax is not subject to this state's use tax. As directed by § 4(1)(a), we examine the provisions of the GTA to determine whether tax was paid on the goodwill adjustment at the retail sale to a customer or whether the department's assessment of use tax was appropriate.

The GTA defines a "sale at retail" as "a transaction by which the ownership of tangible personal property is transferred for consideration, if the transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any purpose other than for resale . . . ." MCL 205.51(1)(b). The question is thus whether the goodwill adjustment policy is consideration flowing to customers when they purchase a GM vehicle or merely an illusory promise. Stated otherwise, we examine whether the cost of the goodwill adjustment policy is included in the retail price of GM vehicles as something that

7

is purchased by customers.

At the time of retail sale, GM customers receive an owner's manual. The manual invites customers to initiate a dialogue with the dealership when a defect arises, "during or after the warranty periods." The manual states the goal of resolving the defect to the "customer's satisfaction." GM admits that its customers are not guaranteed that requested after-warranty goodwill adjustments will be made. Indeed, GM suggests its dealers negotiate with customers for copayment on goodwill adjustments case by case.[7] Nevertheless, GM's goodwill policy is a promise to hear and address customer complaints even after the written warranty expires.

To have consideration there must be a bargained-for exchange. *Higgins v Monroe Evening News,* 404 Mich 1, 20-21; 272 NW2d 537 (1978). There must be "'a benefit on one side, or a detriment suffered, or service done on the other.'" *Plastray Corp v Cole*, 324 Mich 433, 440; 37 NW2d 162 (1949). Courts do not generally inquire into the sufficiency of consideration, *Harris v Bond & Mtg Corp*, 329 Mich 136, 145; 45 NW2d 5 (1950). It has been said "[a] cent or a pepper corn, in legal estimation, would constitute a valuable consideration." *Whitney v Stearns*, 16 Me 394 (1839). The

---

[7]GM Service Bulletin No. 57-05-01, April 1995.

owner's manual provided at the time of sale invites customers to voice complaints even after the warranty period ends, with the goal of resolving the complaint to the customer's satisfaction. We hold that this opportunity for dialogue and possible resolution of complaints—even outside the warranty period—is a benefit flowing to purchasers of GM vehicles at the time of retail sale and, therefore, is consideration for the sale.[8] Therefore, replacement parts provided pursuant to the goodwill program are subject to the sales tax at the time of retail sale and are exempt from the use tax under § 4(1)(a) of the UTA.[9]

---

[8]While acknowledging that a customer pays for the goodwill program, the dissent "cannot fathom" that a customer would bargain for the opportunity to have postwarranty complaints addressed. This skepticism is inconsistent with this Court's traditional reluctance to question the sufficiency of consideration and is not justification to override the Legislature's expression of intent in UTA § 4(1)(a) to avoid the pyramiding of the sales and use taxes.

[9] While not part of our dispositive analysis, it is noteworthy that GM audits the cost of the goodwill adjustment policy twice annually with the goal of recovering costs and maintaining profitability. A witness for the department acknowledged that GM uses the same method to account for the cost of warranty repairs and goodwill policy adjustments. It is evident that GM attempts to effectively include the cost of warranty repairs in the retail price of its vehicles. The record reflects that the cost of the goodwill adjustment policy is likewise included in the retail price of GM vehicles. A GM witness testified that "implicit in the price is the fact that we need to cover all the costs, and both policy and warranty are costs that are included . . . ."

9

GM's promise pursuant to its goodwill adjustments policy, while discretionary with respect to whether there will be any "adjustment," is not discretionary regarding GM's obligation to act reasonably and in good faith in response to a customer complaint.[10]   Reinforcing this contractual undertaking to act in good faith is MCL 440.1203, part of Michigan's version of the Uniform Commercial Code.   MCL 440.1203 provides that "[e]very contract or duty within this act imposes an obligation of good faith in its performance or enforcement."[11]   This means that, should GM not consider complaints under the goodwill adjustment policy in good faith, it can be sued.

The dissent agrees that a unilateral or discretionary promise could "constitute valid consideration."  *Post,* p 4. However, the dissent would decline to rule that GM's promise

_____

[10]As stated by Professor Arthur Corbin:

> Promissory words are not nullified by making the promise conditional on some event within the promisor's own power, if at the same time the promisor impliedly promises to make a reasonable effort to bring the event about or to use good faith and honest judgment in determining whether or not it has in fact occurred. [2 Corbin, Contracts, § 5.32, p 177.]

[11] Because the sale of a vehicle is the sale of a good, a contract for such a sale is subject to the Uniform Commercial Code.  See MCL 440.2102 (providing generally that the UCC "applies to transactions in goods").

10

is valid consideration in part because GM's customers have "little if any" knowledge of the scope of GM's discretion. *Id.* That it is unknown how liberally GM will exercise its discretion does not mean there is no discretion. In fact, it means there is discretion, i.e., a benefit to the consumer.[12] The dissent has fallen into the error of considering not merely if there is consideration, but its sufficiency. As we have stated, courts do not inquire into the adequacy of consideration to support a contract. *Higgins, supra.*[13] Thus, we conclude that the duty the goodwill policy imposes on GM to

_____

[12] We note that this is a greater right than the inherent ability to complain possessed by consumers generally. While a customer would typically have the practical ability to bring a complaint to the attention of a manufacturer, absent a contractual or other legal duty, the manufacturer would be free to simply ignore such complaints without giving them any consideration. However, because of its contractual undertaking for the goodwill policy, GM has a duty to consider such complaints in good faith.

[13] This point is reinforced by Professor Samuel Williston:

> It is an elementary and oft quoted principle that the law will not inquire into the adequacy of consideration so long as the consideration is otherwise valid to support a promise. By this is meant that so long as the requirement of a bargained-for benefit or detriment is satisfied, the fact that the relative value or worth of the exchange is unequal is irrelevant so that anything which fulfills the requirement of consideration will support a promise, regardless of the comparative value of the consideration and of the thing promised. The rule is almost as old as the doctrine of consideration itself. [3 Williston, Contracts (4th ed), § 7:21, pp 383-386.]

11

consider requests for redress in good faith is a valuable consideration that is worth far more than the legendary peppercorn.[14]

Moreover, the evidence indicates that for the period 1986-1992, plaintiff provided "goodwill" parts to customers of General Motors cars having an estimated value of $82 million. As the dissent itself recognizes, "the cost of . . . [these] parts has been factored into the retail cost of the car . . . ." *Post,* p 5. If this is so, then such costs have been necessarily paid by the consumer at sale, i.e., a car otherwise valued at $9975 has been increased in price to $10,000 and the consumer has paid an additional $25 for the goodwill policy. Plaintiff, not being a charitable institution, must necessarily have factored the cost of the goodwill policy into the cost of the car, and such cost must necessarily have been paid by the consumer. Further, it can be presumed that the consumer paid $25 because something of value passed. The automobile industry is sufficiently competitive that few companies can afford to tack costs onto

[14] In concluding that the goodwill program amounted to an illusory promise, the Court of Appeals referenced *Barbat v M E Arden Co*, 74 Mich App 540, 543-544; 254 NW2d 779 (1977), for the proposition that "[a]n unenforceable promise cannot constitute consideration." However, that case is inapplicable because it involved a promised performance that was "unenforceable" because it was void as illegal.

their products for parts or services that are perceived as valueless by their consumers. Contrary to the dissent, we can easily envision a "rational, self-interested market participant" paying something for a benefit estimated to provide more than $13 million in annual benefits to consumers. Our interpretation of MCL 205.94(1)(a) does not constitute a "lax" interpretation of consideration as the dissent asserts. *Post,* p 7. Rather, our interpretation is based on fundamental contract principles and reflects the realities of the marketplace.[15]

IV

Because the goodwill adjustment policy provides an opportunity for GM customers to seek redress of vehicle defects and because the policy is included in the retail price of GM vehicles and purchased at the time of retail sale, it is part of the consideration flowing to GM customers when they purchase a GM vehicle that is taxed pursuant to the GTA at

---

[15] The dissent asserts that "[m]erely because plaintiff proves through its accounting methods that it charges all consumers for costs associated with a program . . . , I cannot conclude that 'consideration' was paid by purchasers . . . ." *Post,* p 6, n 4. If this statement does not set forth the very essence of "consideration," it is hard to know what the term means. Of course, we recognize that not *every* cost factored into the price of a manufacturer's product is exempt from use tax as a form of "consideration" to a customer. Costs that do not provide a benefit to a customer could not be consideration.

13

retail sale.  We reverse the decision of the Court of Appeals and remand this case to the Court of Claims for entry of judgment in favor of GM.

CORRIGAN, C.J., and TAYLOR, YOUNG, and MARKMAN, JJ., concurred with WEAVER, J.

# S T A T E   O F   M I C H I G A N

## SUPREME COURT

GENERAL MOTORS CORPORATION,

    Plaintiff-Appellant,

v                                                          No. 116984

DEPARTMENT OF TREASURY,
REVENUE DIVISION,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

I write separately to express my disagreement with the majority's conclusion that retail new car customers exchange consideration for goodwill policy parts when purchasing vehicles manufactured by plaintiff. Plaintiff has claimed its goodwill repair parts should not be subject to use tax because the costs are included in the price of the vehicle, which is subject to sales tax. Under MCL 205.94(1)(a), no use tax is owed on retail sales subject to sales tax. However, this exemption applies only if the parts are included in a "sale at retail," i.e., "a transaction by which the ownership of

tangible personal property is transferred for consideration. . . ."  MCL 205.51(1)(b).  Because I cannot agree that the goodwill parts are transferred for consideration, I must respectfully dissent.

I

Plaintiff directs its dealers to make goodwill adjustments case by case "where special consideration is in order to enhance customer satisfaction and loyalty."[1]  Most dealers have the discretion to provide repair parts free or at a reduced rate to consumers after the original warranty expires.[2]  These repairs are provided to select customers who

_____

[1] GM Service Bulletin No. 57-05-01, April 1995.

[2] Plaintiff provides specific negotiation tactics:

> In situations beyond the warranty period, but within your claim authorization empowerment, customers have received a value from use of the vehicle.  It would be reasonable to consider partial payment by the customer.  The judgment belongs to you.

> * * *

> In those cases which warrant a Policy Adjustment, there is seldom a reason for Buick to pay the entire amount.  Never lose sight of the fact that the owner has driven the vehicle for the life of the warranty, and then some. Unquestionably, the customer has received some value from the investment.  Do not hesitate to bring this up during the negotiation.

Dealers are also advised to "determine what the owner expects . . . evaluate the . . . complaint . . . [and]
(continued...)

2

are unsatisfied with defective parts after the manufacturer's warranty expires.

Consumers are not given any general or specific information concerning the goodwill program and are informed in the warranty manual of their right to contact plaintiff after the manufacturer's warranty expires if they are dissatisfied with the dealer's offered resolution. The written warranty also indicates that arbitration proceedings may be an option.[3] In essence, the consumer is given an opportunity to ask for free repair parts, but has no legal right to any specific repair and knows nothing of the goodwill policy program in general, or of its specific terms. Though plaintiff may agree to subject itself to arbitration proceedings, consumers gain no legally enforceable right as a result of this program, a program purportedly "purchased" at the retail sale.

Consideration requires bargained-for legal detriment.

---

[2](...continued)
[d]etermine if the customer will be satisfied with any offer you might make."

[3] Contrary to the implication by the majority, plaintiff's participation in arbitration is in no way guaranteed. While a consumer may always request arbitration, plaintiff reserves the right to refuse to participate. See 1990 Warranty and Owner Assistance Information for Buick New Cars ("GM will *generally* agree to be bound by the arbitrator's decision . . . . [GM] reserves the right to change eligibility limitations and/or to discontinue its participation in the program" [emphasis added]).

*Higgins v Monroe Evening News,* 404 Mich 1, 20-21; 272 NW2d 537 (1982) (opinion by Blair Moody, Jr., J.).  I agree with the majority that a discretionary promise must be exercised in good faith and that the reasonable execution of such a promise may constitute valid consideration. *J R Watkins Co v Rich,* 254 Mich 82, 84-85; 235 NW 845 (1931); *Wood v Lucy, Lady Duff-Gordon,* 222 NY 88; 118 NE 214 (1917).  However, I am not convinced that plaintiff's good-faith exercise of its discretionary power is sufficient to permit a finding of bargained-for consideration in this instance.  A party relying on the good-faith exercise of another's unilateral discretion generally has some knowledge of the scope of discretion involved and the potential benefits that might accrue.  In this case, customers have little if any knowledge of what they allegedly bargained and paid for at the retail sale.  I cannot fathom what rational, self-interested market participant would actually bargain for and purchase such a promise.  If it came free with the purchase price, most would accept it, but almost no one would *buy* it.

Further, I am not sure that an arbitrator would have *any* reason to rule in favor of a customer if dissatisfaction actually resulted in an arbitration hearing.  On the basis of the contract between the parties, the express warranty would have expired if a customer requested parts under the goodwill

4

policy. The simple failure to purchase a supplemental warranty suggests plaintiff has absolutely no legal or good-faith *duty* to repair defective parts after the warranty expires. The presence of express promises (original warranty) and the opportunity to purchase supplemental promises (extended warranty) evidence the parties' intention that plaintiff escape liability for defects after the original warranty period expires. Because information concerning the terms of the goodwill policy is generally kept secret, I am not sure that a consumer could adequately plead his case to the arbitrator, assuming plaintiff agreed to participate. All a consumer is left with is the right to complain to plaintiff, and I believe it is a stretch to consider that sufficient consideration where such a right exists regardless of the goodwill policy. Therefore, I would hold that the goodwill policy adjustment program does not constitute valid consideration.[4]

---

[4]Like the majority, I respect the doctrine that generally prohibits courts from questioning the adequacy of consideration. Unfortunately, that doctrine is inapplicable here because absolutely no consideration for the goodwill parts passed between the parties at the retail sale. Merely because plaintiff proved through its accounting methods that it charges all consumers for costs associated with a program that results in free or discounted parts to some, I cannot conclude that "consideration" was paid by purchasers at the retail sale for goodwill parts. GM's $82 million dollars worth of repairs, while certainly of value, simply cannot be regarded as legal consideration.

(continued...)

Even so, I agree that the cost of the goodwill policy parts has been factored into the retail cost of the car, and to that extent the goodwill parts are subject both to use and sales tax. Unfortunately, because the use tax statute exempts only costs transferred for consideration in a retail sale, the Legislature essentially failed to avoid pyramiding taxes where costs are factored into a product, but are not actually part of the consideration paid. MCL 205.51, 205.94(1)(e).[5]

---

(...continued)

Further, the majority implies that any cost factored into the price of the car by GM should be exempt from use tax. If that were the case, no manufacturer would ever pay use tax because generally all costs work their way into the price of products. The statute as currently drafted does not provide an exclusion per se for all costs factored into product prices, only those for which consideration has passed at a retail sale. See MCL 205.94(1)(a), 205.51(1)(b).

The majority also presumes that a customer can pinpoint the costs associated with a program it knows nothing of and buy the car in part on the basis of the promised value associated with the goodwill policy. The error lies in that assumption. We cannot assume market participants are making rationale choices when they lack sufficient knowledge of the goodwill policy. Neither GM nor the dealer bargains over this product with the consumer. GM keeps the terms and scope of the program confidential, thereby making it impossible for a consumer to pay for such a program with consideration. The majority's attempt to rebut my position ignores the foundational principles of consideration, i.e., bargained-for consideration is absent where "the action that the promisee took was *not induced* by the promise." Farnsworth, Contracts, (2d ed), § 2.6, p 52 (emphasis in original). In this case, plaintiff simply fails to give consumers an opportunity to be induced by the alleged benefit.

[5]In an attempt to refute my position, the majority erroneously infers the following:

(continued...)

6

I suspect the most appropriate and forthright method to analyze the goodwill program for tax purposes would be to conceive of the parts as promotional or gratuitous items. Plaintiff grants adjustments "in order to enhance customer satisfaction and loyalty." In essence, the goodwill policy is a select form of advertising, i.e., a large scale version of the distribution of free pens and cups to conference participants or the provision of free pharmaceutical samples to physicians. Dealers probably grant the benefits of the discretionary goodwill program to those customers most likely to experience enhanced manufacturer loyalty. Because the program most resembles a marketing or customer satisfaction

---

[5](...continued)

> [T]he dissent would decline to rule that GM's promise is valid consideration in part because GM's customers have "little if any" knowledge of the scope of GM's discretion. *Id.* That it is unknown how liberally GM will exercise its discretion does not mean there is no discretion. In fact, it means there is discretion, i.e., a benefit to the consumer. [*Ante* at 10-11.]

To clarify, I conclude that GM's parts cannot constitute valid consideration because the consumers did not bargain for, and were not induced to act because of, the goodwill policy in general or the parts in particular. Moreover, I agree that GM has discretion. In fact, GM has so much discretion that it would be impossible for consumers to bring an action claiming that discretion was exercised without good faith. The majority errs by inferring from my statement that describes a consumer's lack of knowledge concerning the scope of GM's discretion that the existence of discretion is itself dispositive of the inquiry.

offer, and because there is no general statutory exemption for promotional items from use tax in Michigan,[6] I would permit defendant to assess use taxes, assuming it does so in a uniform fashion. See *Virginia Dep't of Taxation v Miller-Morton Co*, 220 Va 852, 859; 263 SE2d 413 (1980) (when a distributor of products withdrew products from inventory within the state for free disposition to customers also within the state, the distributor exercised a power incident to ownership of the products, and this use of products previously held for resale was not within the exemption from use tax).

### III

The majority permits a lax interpretation of consideration in order to bridge the gap between the text of the statute and the general desire to avoid duplicate taxation. While the end might be worthwhile, the method arguably creates an empty definition of consideration that could affect future bargainers. Rather than compensate for the legislative failure to exempt all product costs from use tax by watering down our understanding of consideration, I

---

[6] MCL 205.94(1)(c) exempts from use tax certain promotional items, which include:

> [P]romotional merchandise transferred pursuant to a redemption offer to a person located outside this state or any packaging material, *other than promotional merchandise,* acquired for use in fulfilling a redemption offer or rebate to a person located outside this state. [Emphasis added.]

8

would hold that the repair parts are not included in the retail sale for which consideration is paid.

KELLY, J., concurred with CAVANAGH, J.